THE PEOPLE *ex rel.* City of Pontiac

v.

THE CENTRAL UNION TELEPHONE COMPANY.

*Opinion filed October 24, 1901.*

1. PLEADING—*one cannot plead and demur at same time.* By replying to plea after the overruling of demurrer the right to question the sufficiency of the plea is waived.

2. SAME—*form of pleading in quo warranto.* Under the statute the course of pleading in *quo warranto* is the same as in other actions.

3. SAME—*respondent in quo warranto must prove title.* Ordinarily, in *quo warranto* the burden of proof is on the respondent to prove his title as pleaded, or so much of it as is traversed.

4. SAME—*when replications to special pleas are demurrable.* Where the pleas of the respondent in *quo warranto* set up the respondent's charter as a corporation by way of inducement, and conclude with a denial, under the *absque hoc*, of the usurpation charged in the information, replications thereto are demurrable which traverse the allegations of the inducement instead of the denial.

5. SAME—*effect of filing quo warranto information against corporation in corporate name.* The effect of filing an information in the nature of *quo warranto* against a corporation by its corporate name, to compel the corporation to disclose by what authority it exercises corporate privileges, is to admit the existence of the corporation.

6. CORPORATIONS—*license to use streets becomes a contract after acceptance.* The right of a telephone company to use the streets and alleys of a city under an ordinance is not a franchise but a license, which, however, becomes a contract, revocable only for cause, after the corporation has accepted the privileges and entered upon the use of the streets.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

A. C. BALL, State's Attorney, (W. C. GRAVES, of counsel,) for appellant.

LOUIS G. RICHARDSON, and WILLIAM B. MANN, for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is an information in the nature of a *quo warranto*, begun in the circuit court of Livingston county by the People, on the relation of the city of Pontiac, against the Central Union Telephone Company. The information is by the State's attorney of Livingston county, for the People, and gives the court "to understand and be informed that the Central Union Telephone Company, a corporation, for the space of four months or more now last past, in the county aforesaid, unlawfully has held and still does hold, without any warrant or right whatever, the use of the streets and alleys of the city of Pontiac for the purpose of maintaining a system of telephones or telephone exchange in the said city of Pontiac; that the said Central Union Telephone Company, during all the time aforesaid, in the city aforesaid, upon said People has usurped, and still does usurp, the said use of the said streets and alleys of the city of Pontiac, to the damage and prejudice of the said People," etc., whereupon said State's attorney "prays the consideration of the court in the premises and due process of law against the said Central Union Telephone Company to make answer to the said People by what warrant it claims to exercise and use the streets and alleys of the said city of Pontiac, as aforesaid." The respondent, the Central Union Telephone Company, filed six pleas. The relator filed a demurrer to each of them, which was sustained to

all except the sixth. The relator replied double to the sixth plea, filing four replications thereto. The respondent demurred to each of these replications and the court held them bad. The relator amended each of the four replications and the respondent moved to strike them from the files, which motion was sustained as to the second and fourth and overruled as to the first and third,— to which ruling both parties excepted. The respondent then demurred to the first and third amended replications, which demurrers were sustained, and the relator having failed to plead over, judgment was entered for the respondent. The relator appeals. ·

The first error assigned on the record is, "the court erred in striking from the files the plaintiff's second and fourth amended replications to defendant's sixth plea." The second and third question the decision of the court in overruling the demurrer to the sixth plea; the fourth and fifth, in sustaining the demurrer to the first and third replications; the sixth, in not carrying defendant's demurrer to the first and third amended replications back to the sixth plea and sustaining the same; and the seventh, in entering judgment in favor of the defendant on the sixth plea. The second amended replication is almost a literal copy of the first, and the fourth is exactly, in legal effect, like the third. They serve no other purpose than to further encumber an already unnecessarily voluminous record, and were properly stricken from the files. As counsel suggest, the court might have required the party to elect on which it would proceed and struck out the others, but it was not bound to follow that practice. *Parks* v. *Holmes*, 22 Ill. 522.

After the demurrer to the sixth plea was overruled the relator took leave and replied to it. The demurrer was thereby waived,—first, because no motion was made to carry the demurrer back to the plea; and second, because, by pleading over after demurrer, the right to question the sufficiency of the plea ceased. It is not per-

missible to plead and demur at the same time.    *Culver*
v. *Third Nat. Bank*, 64 Ill. 528, and cases there cited.

The sixth plea set up, first, the incorporation, under
the general Incorporation law of the State of Illinois, of
the Central Telephone Company; second, an ordinance
of the city of Pontiac granting it the right to use the
"streets, sidewalks, alleys and public grounds of the city
for the use and purpose then and there to erect, maintain
and use all the necessary poles or posts, of wood or iron,
or other substance, material and the necessary wires to
successfully operate and use a system of telephones or a
telephone exchange in the city of Pontiac;" third, the or-
ganization of the defendant, the Central Union Telephone
Company, under the same laws of the State; fourth, that
on the 29th day of June, 1883, the first named company
granted, bargained, sold and conveyed to the latter "all
its property, assets, licenses, contracts, concessions, and
all documents, correspondence and papers; all property
rights, legal or equitable, credits and rights of action;
all telephone exchange wires, poles, insulators, switch-
boards, batteries, instruments and machines; all tools
and articles of every description; all right, title and in-
terest in any contract, license or privilege, or property
of whatever description;" fifth, that the Central Tele-
phone Company accepted the license under the ordinance
first named, and that the defendant, upon the assign-
ment and conveyance to it of the property, etc., of the
Central Telephone Company, entered upon the use of the
streets and alleys of the city of Pontiac, and from thence
hitherto has continued to use them for the purpose of
operating a telephone system, etc.; and sixth, that on
the 7th day of April, 1899, the city of Pontiac adopted
and approved an ordinance granting the right and privi-
lege to the defendant to use certain streets and alleys
of the city for the purpose of extending its telephone
system in said city. This plea sets up other facts by way
of inducement, and concludes: "Without this, that the

Central Union Telephone Company has usurped or now does usurp the use of the streets and alleys, liberties, privileges and franchises aforesaid, or any or either of them, upon the said People as by the said information is above supposed; all of which matters and things this defendant is ready to verify, as the court shall consider, whereupon it prays judgment," etc.

It is true, as said by counsel for the relator, that the grant by the city of Pontiac of the right to use the streets, etc., is not a franchise, but a license or contract; but it is equally clear that when the corporation accepted the privileges and entered upon the right to use the streets, etc., it became a binding contract between the city and company, which could not be revoked or rescinded except for cause. *Chicago Municipal Gas Light Co.* v. *Town of Lake*, 130 Ill. 42; *Chicago City Railway Co.* v. *People*, 73 id. 541; *City of Belleville* v. *Citizens' Horse Railway Co.* 152 id. 171.

It is suggested in the argument that the Central Telephone Company could not assign the license granted to it, to the defendant. That, perhaps, would have been true but for the terms of the ordinance to the first company, which grants the privilege to the "Central Telephone Company and its successors and assigns."

The principal question in the case is whether the circuit court properly sustained the demurrers to the first and third replications. These replications attempt to traverse the inducement to the sixth plea, the first being a denial of each and every one of the allegations of that plea, and the third, counsel admit, "not only specifically traverses the inducement in the sixth plea, but also sets up new matter," etc. We have frequently held that under our statute the course of pleading is the same in *quo warranto* as in other forms of action, and, in fact, the statute itself so provides. (Hurd's Stat. 1899, chap. 110, sec. 10, p. 1285.) The *onus probandi* generally lies on the defendant, who must prove his title as pleaded,

or such part of it as is traversed. (*Chicago City Railway Co.* v. *People, supra; People* v. *Bruennemer,* 168 Ill. 482; *Distilling Co.* v. *People,* 156 id. 448; *Independent Medical College* v. *People,* 182 id. 274.) We said in *People* v. *Pullman's Car Co.* 175 Ill. 125 (on p. 135): "Each of the amended pleas, as already stated, sets out the charter of the defendant, and then alleges certain matters of inducement, and concludes with a traverse under the *absque hoc.* The design of a special traverse, as distinguished from a common traverse, is to explain or qualify the denial.. The essential parts of such a plea are the inducement, the denial and the verification. The issuable part of the plea is the denial, which is under the *absque hoc,* and when the denial under the *absque hoc* is sufficient, no issue of fact can be formed upon the inducement."

In *People ex rel.* v. *City of Spring Valley,* 129 Ill. 169, the information was against the city of Spring Valley and Charles J. Devlin, as mayor of said city, and charged that the city was then exercising, and for three months past had exercised, without any warrant, etc., municipal powers of every kind and nature conferred by an act to provide for the incorporation of cities and villages from certain specified territory, etc. The defendant filed a plea, in which it was attempted to set up the various steps taken for the organization of the city, as required by the statute. To this plea the People filed several replications, by some of which they traversed the allegations of the plea as to the organization of the city. A demurrer to these replications was sustained. In passing upon that ruling of the court we said (p. 175): "The demurrers to the replications were properly sustained. The first replication was a general denial of the legal incorporation of the city. The second, third and fourth were specific denials of particular facts necessary to constitute such legal incorporation. The fifth, sixth and seventh charged that the incorporation was illegal and void by reason of the fraudulent means put forth to secure it.

In substance, therefore, all the replications attacked the existence of the city of Spring Valley as a corporation. But this was a departure from the information, or, if not a technical departure in pleading, it amounted to a contradiction of the information by the replications, because the information, by making the city of Spring Valley a party defendant, thereby admitted its existence as a corporation. When an existing corporation abuses any of its franchises or usurps franchises which do not belong to it, the information should be against the corporation, as such; but when a body of men or a number of individuals unlawfully assume to be a corporation, the information should be against them as individuals, and not by their corporate name. Dillon, in his work on Municipal Corporations, (vol. 2, 3d ed. sec. 895,) says: 'It is held in England that if the information be for usurping a franchise by a corporation it should be against the corporation, but if for usurping the franchise to be a corporation it should be against the particular persons guilty of the usurpation,'"—citing cases. It is there further said: "The weight of authority in this country 'may now be regarded as sustaining the proposition that the effect of filing an information against a corporation by its corporate name, to procure a forfeiture of its charter or to compel it to disclose by what authority it exercises its corporate franchise, is to admit the existence of the corporation. When, therefore, the information is filed against the respondent in its corporate name, and process is issued and served accordingly, and the respondent appears and pleads in the same corporate character, its corporate existence can not afterwards be controverted,'"—citing High on Ex. Legal Rem. (2d ed.) sec. 661, and other authorities.

The replications, under either of these views, were clearly obnoxious to the demurrer, and the court properly sustained it.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*