## Charles S. Rieman, Plaintiff in Error, v. Edward W. Morrison, Defendant in Error.

## Gen. No. 18,767.

1. ESTOPPEL, § 7*—*when plaintiff cannot deny nature of cause of action.* Though replications formally traverse the allegations in several pleas that the several supposed causes of action are one and the same, yet when plaintiff's affidavit of claim states that "said cause is a suit upon contract for the payment of money" and all of the counts, except the common counts and the count of *quantum meruit,* expressly declare upon such contract, the cause of action will be regarded as founded thereon and plaintiff will not be heard to assert to the contrary.

2. PLEADING, § 124*—*what qualities replication should contain.* A replication to a plea lacking the quality of certainty and failing to put in issue material and issuable matters set up in the plea is bad.

3. CONTRACTS, § 362*—*when plea met by improper replication will bar action.* Where in an action on a contract for compensation in aiding in the recovery of stolen property a replication to one of several pleas is uncertain, evasive and unresponsive in denying what the plea does not aver and in not putting in issue material and issuable matters, if the untraversed allegations of the plea are a complete answer to the declaration then the action is barred and the sufficiency of other replications will not be considered.

4. CONTRACTS, § 357*—*when construction of is aided by pleadings.* When untraversed allegations of the plea are a complete answer to the declaration, the contract sued on will be construed in the light of the untraversed averments of the plea.

---

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

5. CONTRACTS, § 148*—*when against public policy*. Where in an action on a contract for compensation in aiding in the return of stolen property the untraversed allegations in a plea disclose that plaintiff represented to defendant that he knew the property was stolen, and knew the whereabouts and names of those who had it and that they were wrongfully withholding it; that plaintiff concealed the names and whereabouts of the holders; that he led defendant to believe the property was stolen from him and that plaintiff could secure its return; that part of the consideration was that plaintiff possessed secret beneficial information relating to the larceny and was to receive compensation for its use, and that plaintiff was entitled to claim such compensation for the information alone if any of the property was recovered through it, in the light of the statutes relating to the recovery and return of stolen property and of lost property, J. & A. ¶¶ 3892, 5509, the contract is illegal and against public policy.

6. PLEADING. § 209*—*when demurrer not carried back*. A demurrer to a replication will not be carried back to the plea where no motion is made to carry it back.

Error to the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed December 2, 1913. Rehearing denied December 16, 1913.

FYFFE, ADCOCK & RYNER and DANIEL W. SCANLAN, for plaintiff in error.

JAMES R. WARD, for defendant in error.

MR. JUSTICE BARNES delivered the opinion of the court.

This was an action in *assumpsit* brought by plaintiff in error against defendant in error. The declaration contained the common counts, a count of *quantum meruit* and special counts declaring upon a contract in writing which, as set out in *haec verba* in some of them, reads as follows:

"This agreement, made and entered into this 12th day of June, 1909, by and between Edward W. Morrison and C. S. Rieman, both of Chicago, Illinois, Witnesseth:

That whereas said Morrison believes from infor-

mation furnished him by said Rieman that certain money or moneys, real or personal property, rightfully belonging to him under the law, have been wrongfully withheld from him by others, and whereas said Morrison believes said Rieman is in position to secure the return to him of said money or moneys, property, real or personal, wrongfully withheld from said Morrison by others, now, therefore,

In consideration of the premises and of the services rendered and to be rendered by said Rieman to said Morrison in his efforts to recover the money, or moneys, real or personal property, said Morrison hereby agrees to and with said Rieman that said Rieman shall have and retain as his compensation for his efforts (or for information furnished by him on which any recovery may be made as aforesaid by said Morrison) and for his services in recovering or assisting to recover money or moneys or real or personal property for said Morrison as aforesaid, one-half (½) of the cash so recovered through the efforts, services or information furnished by said Rieman, also cash to the amount of one-half (½) of the value of whatever property, real or personal, may be recovered for said Morrison as aforesaid; said valuation to be determined by three appraisers, one to be chosen by each of the parties hereto and the third by the two so selected, whose findings shall be final as a basis for discharging the provisions of this contract.

Said Morrison hereby gives and grants to said Rieman full authority to represent him in securing the return of the money or moneys, real or personal property, and to receive same in said Morrison's name and behalf, and authorizes said Rieman to secure legal services to assist, if necessary, in the recoveries to be attempted as aforesaid, or to invoke the aid of the authorities, if necessary, to that end. Said Morrison further authorizes said Rieman to employ attorneys and fully represent said Morrison in any litigation that may be necessary to make the recoveries as aforesaid, and to represent him in all other matters in the same connection.

In Witness Whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

(Signed) EDWARD W. MORRISON,
C. S. RIEMAN.

To the replications to the special pleas there were filed several special demurrers, and one in the nature of a general demurrer, referred to as "demurrer 14," which was sustained. Plaintiff electing to stand by his replications, judgment *nil capiat* was entered, the court finding that the contract sued on was void. Exceptions were taken to the sustaining of said demurrer and to the finding.

While the replications formally traverse the allegation in several pleas that the several supposed causes of action are one and the same, yet plaintiff's affidavit of claim states that "said cause is a suit upon contract for the payment of money," dated June 12, 1909, and all of the counts, except the common counts and the count of *quantum meruit*, expressly declare upon such contract. In the face of this solemn admission of record, the cause of action cannot be regarded otherwise than one founded upon such contract, and plaintiff cannot be heard to assert the contrary.

The eighth special plea avers, among other things, that the plaintiff represented to defendant that he "knew of the whereabouts of divers moneys and personal property and effects, the subjects of larceny, the property of, and rightfully belonging to the defendant, and that the said moneys and property belonging to the defendant aforesaid, had been unlawfully and feloniously stolen and carried away from the dwelling house of the defendant under circumstances amounting to the commission of the crime of larceny thereof, and that said moneys and property were wrongfully withheld from the defendant by divers persons who the plaintiff then and there claimed were known to him, and whose names and the whereabouts of said accused

persons the plaintiff then and there unlawfully concealed from the defendant and from the magistrates then and there in the County of Cook and State of Illinois, contrary to the statute in such case made and provided; and further represented to the defendant that by reason of his knowledge, he, the plaintiff, was in a position to secure the return to the defendant of his said moneys and property so wrongfully withheld from him; and the defendant avers that the plaintiff not then and there standing in the relation of husband or wife, parent or child, brother or sister to the offenders or either of them, and with the intention of promoting and controlling litigation between the defendant and divers persons respecting the moneys and property aforesaid, and with the intention of obtaining from the defendant as a compensation for information to be furnished by the plaintiff and used and acted upon, on which recovery may be made of the moneys and personal property of and to the defendant, or in assisting to recover said moneys and property to the defendant, thereby then and there obtained the supposed writing without any good and lawful consideration therefor, contrary to the statutes in such case made and provided, and for the purposes and upon the assurances aforesaid. Wherefore the defendant says that by reason of the premises, and the statutes in such case made and provided, the supposed writing was and is contrary to the common law and the statutes of this State and against the public policy of this State, and is null and void, and this the defendant is ready to verify, Wherefore, etc.''

The replications to this plea not only lack the quality of certainty which is said to be more requisite in a replication than in a declaration (1 Chitty on Pleading, 647), but they fail to put in issue material and issuable matters set up in said plea.

The only replication which purports to answer the several averments is uncertain, evasive and unrespon-

sive in several particulars. It denies what the plea does not aver—the unlawful concealment of the property, but not the unlawful concealment of the names and whereabouts of the accused persons. It denies that plaintiff represented that he was in a position to return the stolen property but not the representations that he knew its whereabouts, who withheld it and that it was wrongfully withheld. It denies the intentions or motives ascribed to plaintiff in obtaining the writing, but not the fact that he did obtain it "upon the assurances aforesaid," which manifestly relate to said representations.

If the untraversed allegations, which stand admitted and confessed by the plaintiff on this record, constitute a complete answer to the declaration, then no consideration need be given to the sufficiency of the other replications to which the demurrer was also sustained; for "When a defendant succeeds on one plea which is a complete answer to a declaration, he is entitled to judgment in his favor in bar of the action." *People v. Bug River Drainage Dist.,* 189 Ill. 55; *Ward v. Stout,* 32 Ill. 399.

The first question presented, therefore, is whether the untraversed allegations present a complete answer to the declaration, and in considering it the contract must be regarded as the sole cause of action, and construed in the light of the untraversed averments in the plea. As said by Lord Campbell in *Sprye v. Porter,* 7 Ellis & Blackburn (Q. B.) 57; "There can be no doubt that the defendant is at liberty to allege that the written agreement declared upon was merely colorable, and to disclose, as a defence, the real nature of the transaction."

Viewing the transaction, therefore, as disclosed by the untraversed averments in the plea, we find: (1) that as an inducement to defendant's entering into the contract, plaintiff represented to him that he knew that the property was stolen from him, that he knew the

whereabouts and names of those who had it, and that they were wrongfully withholding it, if not criminally withholding it, for the contract contemplated the possibilty of 'invoking the aid of the authorities,' if necessary; (2) that he then and there concealed from the defendant their names and whereabouts; (3) that from the information furnished defendant was led to believe that the property was stolen from him and that plaintiff was in position to secure its return; (4) that part of the consideration was the fact that plaintiff possessed secret information, relating to the larceny, unknown to the defendant, which might lead to recovery of the stolen property, and that he was to receive compensation for its use; (5) that he was entitled to claim such compensation for the information alone if any of such property was recovered through it.

We cannot escape the conclusion that the parties so withholding the property were known by plaintiff to be amenable to criminal prosecution, and that knowing their names and whereabouts, plaintiff was bartering for the return of the stolen property for his personal benefit, at least, without divulging the identity of those criminally implicated unless compelled to do so in order to realize the compensation agreed upon.

Can such a contract be upheld? The real test of its validity is its tendency. "If the performance of the obligations imposed by the contract has an evil tendency or furnishes a temptation to use improper means, the contract is illegal and *contra bonos mores.*" *Critchfield v. Bermudez Paving Co.,* 174 Ill. 466.

That such a contract has an evil tendency admits of no discussion. That public policy and good morals imposed upon plaintiff the obligation to impart the information he possessed as to a larceny and the identity of the guilty parties is clear. No one can hesitate to say that such a man voluntarily aids criminals to escape their just deserts, and, morally speaking, is almost if not quite as guilty as the principal offenders.

Story's Conflict of Laws, sec. 253. Presented in the most favorable light plaintiff appears in the position of withholding such information unless compensated for it. From his affidavit of claim it appears that the value of the stolen property recovered was at least $165,000. His claim is for one-half thereof. That defendant might voluntarily reward one for information leading to the return of his property, or contract for proper services connected with it, will not be seriously questioned. But to enforce a contract in favor of one seeking and requiring compensation for such information, while concealing and perhaps aiding criminals, would encourage either secret bartering with thieves or their confederates for return of the stolen property, or arrangements facilitating its marketing, or the compounding of felonies, or the suppression of information that would lead to the punishment of the guilty, or all of these.

The provisions of our Criminal Code (Chapter 38, Revised Statutes, J. & A. ¶¶ 3430 *et seq.*) clearly indicate that such a contract is against public policy. Our statutes prescribe punishment not only for the thief but the guilty receivers of stolen property and accessories after the fact. They make him guilty as a receiver of stolen property who, for his own gain, aids in concealing stolen goods knowing them to have been so obtained. (Section 239, ch. 38, Hurd's R. S., J. & A. ¶ 3892.) They make him guilty as an accessory after the fact who, not standing in the relation of husband or wife, parent or child, brother or sister to the offender, conceals, maintains or assists any principal felon or an accessory before the fact, knowing him to be such (section 276, J. & A. ¶ 3969.) So stringent is the law in its manifest policy to prevent any person from receiving a benefit from stolen property, and thereby to discourage larceny, that it requires all property obtained by larceny shall be restored to the owner (section 243, J. & A. ¶ 3892), and that police regulation

shall be exercised over the business of pawnbrokers, into whose possession such property is likely to come, and, to protect the owner's title thereto, gives him the right to maintain an action against any person in possession thereof (section 243). Our statutes impose upon even the finders of lost property the duty to inform the owner thereof and to make restitution of the same without compensation (except when voluntarily given), and to take action calculated to restore the property to unknown owners (section 27, ch. 50, J. & A. ¶ 5509).

While it may be said that there is nothing in the contract or admitted averments of the plea clearly indicating that plaintiff stood in a criminal relation to the subject-matter of the contract, yet, the admitted facts place him in an unenviable light. They at least raise a suspicion that the information he sought to barter was not innocently acquired. They are clearly consistent with his being a medium through whom criminals sought to realize a profit from their crimes. Whatever his true position, both public policy and good morals required him to impart such information without first seeking to be rewarded for it. Public interest demanded the arrest and prosecution of those who he must have known were violators of the law.

While most of the authorities cited upon this subject relate to the receiving of compensation by officers or those in a fiduciary relation for that which it was their duty to do without compensation, yet the principle is none the less applicable to the case at bar. The contract in question was not merely one for services. It contemplated that the compensation bargained for might be for the information alone provided it led to the recovery of any of the property, and it is a fair implication that the information would not have been available but for the agreement to compensate plaintiff for it. The tendency of the contract to encourage suppression of such information alone is enough to vitiate it. It is not necessary to its invalidity that it appear

that the party seeking to enforce it was in complicity with the guilty parties. If the nature of it is such that it tends to aid those in such relation so as to secure them immunity from arrest and punishment, or to promote their criminal enterprise, it is illegal and unenforcible. It is the plain duty of any honest citizen voluntarily to divulge such information, either to the authorities or to the injured party. But to acquire it and then seek to capitalize it for personal profit is not only repugnant to good morals but tends to protect guilty parties and encourage crime. A contract resting upon such a consideration, or with such pernicious tendencies, will not be enforced.

It is contended that the demurrer should have been carried back to said plea. It is enough to say that we do not think the plea was obnoxious to a general demurrer. Besides no motion was made to carry it back. *People v. Central Union Tel. Co.*, 192 Ill. 307.

We are of the opinion that the demurrer was properly sustained and that the court properly found the contract is void.

*Affirmed.*