## Wytheville.

## COMMONWEALTH EX REL. CITY OF PORTSMOUTH V. PORTS-MOUTH GAS COMPANY.

### June 15, 1922.

1. QUO WARRANTO—*Demurrer to Information in the Nature of a Writ of Quo Warranto—Legal Effects of Demurrer.*—The legal effect of a demurrer to an information in the nature of a writ of *quo warranto* was to admit the facts but not the conclusions of law stated in the information.

2. GAS—*Contract with Municipality for Use of Streets—Limited or Unlimited Time.*—Where a question at issue was the proper construction to be placed on a contract between a gas company and a municipality for the use of the streets of the municipality by the gas company to determine whether the grant was for a limited or unlimited period, and there had been no lapse or break in the corporate existence of the gas company since the date of its original incorporation, the fact that the charter had been twice amended to avoid a forfeiture, is material only in so far as the necessity for such amendments bears upon a proper construction of the franchise granted. And the same is true of the fact that the original franchise was granted to the company, and not in terms to its successors and assigns.

3. GAS—*Contract with Municipality for Use of Streets—Authority of Municipality to Grant Use.*—The city of Portsmouth had legislative authority in 1853 under section 23 of chapter 56 of the Code of 1849 to grant a franchise to a gas company for the use of its streets. Such legislative authority, of course, was necessary to the validity of the grant.

4. GAS—*Contract with Municipality for Use of Streets—Limited or Unlimited Time—Rules for Construction of Contract.*—Where the question at issue was whether a grant by a municipality to a gas company of the right to use the streets of the municipality was for a limited or unlimited time, and the language of the resolution granting the privilege, unaided by extrinsic evidence, was not sufficiently definite and unambiguous to constitute a safe guide in arriving at the intention of the parties, the court must look to the situation of the parties when the

contract was made, the subject matter, the purposes to be accomplished, and particularly to the subsequent construction which the parties themselves had placed upon the contract.

5. GAS—*Contract with Municipality for Use of Streets—Limited or Unlimited Time—Grant of Exclusive Privilege for Limited Time.*—In a resolution by a town council granting a gas company the privilege of using the city streets, no time was fixed for the termination of the period during which the company was to use and occupy the streets for the distribution of gas. Under the resolution the company was to have an exclusive privilege for fifteen years, and its property was to be exempt from town taxes for ten years, but the resolution did not expressly say, and it is not necessarily implied from these provisions, that the right to use the streets was to cease at the end of fifteen years.

6. GAS—*Grant by Municipality of Use of Streets—Construction of Public Grant.*—Public grants, such as grants by municipalities to gas companies of the right to use and occupy the streets of the municipality for the distribution of gas, are to be strictly construed. But this principle of construction does not deny a fair and reasonable interpretation to such grants, or justify the withholding of that which it satisfactorily appears the grant was intended to convey.

7. STATUTES—*Construction—Public Grants.*—Although public grants are to be strictly construed, in construing such grants the courts have been careful to extend a reasonable and just protection to public utility corporations whose investments have necessarily been based upon calculations of future growth and development.

8. GAS—*Grant by Municipality of Use of Streets—Limited or Unlimited Period.*—Where the question at issue was whether a grant by a municipality to a gas company of the use of the municipality's streets for the distribution of gas was of limited or unlimited duration, the fact, unequivocally alleged in the information, that the company for more than sixty years had been using the streets of the city, precludes any contention that the parties construed the franchise as limited in duration by fifteen years, during which, under the grant, the company was to have the *exclusive* use of the streets for the distribution of gas, or by the potentiality that the charter of the gas company might expire by legislative limitation.

9. CORPORATIONS—*Franchise—Distinction Between Franchise to be a Corporation and Franchise to Have and Use and Hold Rights.*—There is a clear distinction between a franchise to be a corporation and a franchise to have and use and hold rights

which are contractual and proprietary in their nature. A corporation can take a franchise of the latter class for a period longer than its corporate existence.

10. MUNICIPAL CORPORATIONS—*Grant of Franchise to Public Service Corporation—Implied Grant—Writing.*—A franchise by a municipality to a public service corporation need not always be granted expressly or in writing, but may be conferred by implication.

11. GAS—*Grant of Franchise for Use of Streets by Municipality—Limited or Unlimited Period.*—Where there is room for doubt as to whether a town by a resolution of its council intended to consent to a gas company's use of its streets for an indefinite period or for a period limited by the company's charter, then the question whether the company, in view of its charter rights, needed any authority from the town, may be considered in arriving at the intention of the parties. If such authority was not needed, it is not unreasonable to argue that it would not have been asked for or granted.

12. GAS—*Grant of Franchise for Use of Streets by Municipality—Limited or Unlimited Period.*—Where the question at issue was whether by a resolution of a town council a town intended to grant a gas company a right to use its streets for the distribution of gas for a limited or unlimited time, the parties cannot be said to have contracted under the influence of powers or limitations created by the gas company's charter, where such charter had not been granted at the time the resolution was passed.

13. GAS—*Use of Streets of Municipality—Right to Use Streets Under Charter Provision Without Consent of Municipality.*—The charter of a gas company authorized the company to use the streets of a city for the purpose of distributing gas. But the charter was expressly made subject to all the provisions of chapters 56 and 57 of the Code of 1849, except so far "as this act may otherwise prescribe."

*Held:* That, by virtue of section 23 of chapter 56 of the Code of 1849, the gas company could not lawfully have occupied the streets of the city without the consent, express or implied, of the city.

14. MUNICIPAL CORPORATIONS—*Use of Streets by Public Utilities—Consent of Municipality.*—Ever since the Code of 1849 went into effect, it has been the general policy of this State to require that the consent of municipalities shall first be given before their streets shall be occupied by the works of any corporation for public improvement. An exception to that policy, to be recognized, would have to be very clearly created.

15. MUNICIPAL CORPORATIONS—*Use of Streets by Public Utilities—Consent of Municipality—Mode of Consent.*—No particular mode of manifesting the municipal consent to the use of the streets of the municipality by a public utility is in general prescribed, and in the absence of a prescribed form, such consent may be either express or implied. And·it has been held that consent may be presumed where the streets of the municipality have been used for a long period of years under such circumstances as amount to a claim of right.

16. MUNICIPAL CORPORATIONS—*Use of Streets by Public Utilities—Consent of Municipality—Whether Limited as to Time or Perpetual.*—A franchise once granted to use the streets, with *no limit as to time,* and no right of revocation reserved, is usually construed as *perpetual,* after acceptance and user, so long as a grantee observes the conditions under which the grant is made.

17. CONSTITUTIONAL LAW—*Construction—Retroactive Construction—Sections 124 and 125 of the Constitution of 1902.*—Sections 124 and 125 of the Constitution of 1902, in regard to the use of the streets of a city by a gas company and the grant of a franchise by a municipality to a gas company, have no retroactive effect. To hold otherwise would violate elementary rules of construction. And furthermore, to so hold in the instant case would impair the obligation of the contract between the gas company and the city for the use of the city's streets, and deprive the company of its property without due process of law.

18. CORPORATIONS—*Amendment or Extension of Charter—Surrender of Privileges—Section 158 of the Constitution of 1902.*—Where a gas company was vested by a resolution of a town council with a franchise for the use of the town streets for an indefinite period for the distribution of gas, an extension of the gas company's charter by the State Corporation Commission has no effect on the company's right to use the streets of the city, notwithstanding section 158 of the Constitution of 1902, providing that a corporation accepting an amendment or extension of its charter shall surrender any exemption from taxation, any nonrepealable feature of its charter, or any exclusive right or privilege.

19. CORPORATIONS—*Amendment or Extension of Charter—Surrender of Privileges—Section 158 of the Constitution of 1902.*—Section 158 of the Constitution of 1902, providing that a corporation accepting an amendment or extension of its charter shall surrender any exemption from taxation, any nonrepealable feature of its charter, or any exclusive right or privilege, cannot be construed as interfering with any of the proprietary or contractual rights of corporations acquired prior to any amendments of their charters by the State Corporation Commission.

Error to a judgment of the Hustings Court of the city of Portsmouth in a proceeding by information in the nature of a writ of *quo warranto.* Information dismissed. The Commonwealth assigns error.

*Affirmed.*

The opinion states the case.

*R. C. Barclay* and *Mann & Tyler,* for the plaintiff in error.

*Goodrich Hatton,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

The Commonwealth of Virginia, at the relation of the city of Portsmouth, in April, 1918, filed in the Hustings Court of that city an information in the nature of a writ of *quo warranto* against the Portsmouth Gas Company, alleging that the company, "from the 18th day of February, 1914, and ever since, has exercised the privilege or franchise not conferred upon it by law to use the streets, lanes and alleys of the city of Portsmouth, for the purpose of laying gas mains and pipes to distribute gas for public and private lighting and heating, and for power."

The respondent interposed a demurrer to the information, which was sustained, and thereupon, the plaintiff not desiring to amend, the court entered the order now under review, adjudging "that the Portsmouth Gas Company from the eighteenth day of February, nineteen hundred and fourteen, and ever since that time, was not in the exercise of a privilege or franchise not conferred upon it by law to use the streets and alleys of the city of Portsmouth for the purpose of laying and maintaining its gas mains and service pipes to distribute gas for public and private use. And that the charter of the Portsmouth Gas Company, by successive amendments having been extended to a period with-

out limit, the said Portsmouth Gas Company is legally in the exercise of a franchise to use the streets and alleys of said city for said purposes so long as the Portsmouth Gas Company may continue in existence, the court doth order that the demurrer to said information be, and is hereby, sustained. * * * And * * * that said information * * * is. dismissed."

The material allegations of the information, other than as above set out, are as follows:

That Portsmouth was incorporated as a town by the Colonial Assembly in 1752, and as a city by the General Assembly in 1858;

That on September 6, 1853, the council of the town of Portsmouth passed the following resolution:

"Whereas, Messrs. Perdicaris and Hoy, of Trenton, N. J., have expressed to the council their desire to erect, for the use of the citizens of the town, a suitable set of gas works, provided the authorities of the town and its citizens will give them protection and encouragement; and, whereas, the council of Portsmouth desires to give Messrs. Perdicaris and Hoy a proof of the favor with which they will regard the erection of gas works to supply the citizens with a cheap, beautiful and much-needed light; therefore, be it resolved,

"First. That the town of Portsmouth do grant unto Messrs. Perdicaris and Hoy and, through them, to the 'Portsmouth Gas Company' the *exclusive* privilege for the space of fifteen years from the completion of the gas works in the said town, of opening the streets and alleys of the town for the purpose of laying street mains and service pipes through them; the opening and closing of said streets and alleys to be done with all reasonable dispatch, and the said streets and alleys to be forthwith repaired and left by the parties opening them in the same good order and condition as before, at their own expense.

"Second. That the town of Portsmouth will exempt from

town taxes the property of said contemplated gas works for the space of ten years from the going into operation of the same.

"Third. That the town of Portsmouth will pass all legal and proper ordinances to protect the said gas works and property from injury.

"Fourth. That on the completion of said gas works, the town of Portsmouth will contract for the lighting of such number of public lamps as the council may deem proper and the interest of the town may require.

"Fifth. That should the said Perdicaris and Hoy fail for six months to proceed to erect their gas works, and complete them with all practical dispatch, or should the gas furnished by said works when in operation be inferior in quality to, or furnished at a higher charge to the consumers per thousand feet than that furnished by the gas works in the cities of Norfolk or Richmond, then the town of Portsmouth, at any and all times, reserves the right to annul the whole or any portion of the foregoing resolutions, and revoke the privilege hereby granted."

That on November 1, 1853, the town council, by another resolution, extended the time within which the gas works were to be commenced and completed, and also made certain alterations as to charges for and quality of gas to be furnished;

That the foregoing resolutions constitute all the formal corporate action by the municipality, except as hereinafter set out, giving consent of the corporate authorities for use by the gas company of the streets and alleys of the town;

"That, within the time limit specified in said resolutions, the said Perdicaris and Hoy and the Portsmouth Gas Company proceeded to erect gas works and to lay mains in the streets and alleys of the town of Portsmouth, and ever since the fall of 1854 has been, and now is, using the streets, alleys and lanes of said town or city to furnish gas to the

inhabitants of the town and of the city of Portsmouth, and has continuously during said period, pursuant to contracts made between the Portsmouth Gas Company and said town and city in accordance with resolutions passed by the councils of said town and city, furnished gas for the streets and public buildings of the municipalities of the town and city of Portsmouth;

"That in the year 1854, the General Assembly of Virginia passed an act to incorporate the Portsmouth Gas Company, by act approved on the 11th day of February, 1854, authorizing the Portsmouth Gas Company to use the streets, alleys and lanes of the town of Portsmouth without regard to the consent or dissent of the council of said town or city, except as to the repair of the streets, lanes and alleys which may have been opened for the purpose of laying the said pipe, as will be seen by Acts of the General Assembly of Virginia 1853-4, page 86;

"That this charter, with all the rights therein granted to the streets, alleys and lanes of the city of Portsmouth expired by its terms on the 11th day of February, 1884;

"That on the 19th day of February, 1884, the Portsmouth Gas Company applied to the General Assembly of Virginia for an amendment, re-enactment, extension and renewal of its charter, and the same was granted for a further period of thirty years from that date, as will be seen by the Acts of the General Assembly of Virginia 1883-4, page 169;

"That the corporate existence, together with the rights granted to said company in and to the streets, alleys and lanes of the city of Portsmouth by this latter act of the General Assembly of Virginia, expired on February 19, 1914;"

That on the 17th day of May, 1911, "the Portsmouth Gas Company, recognizing that their corporate life and the rights therein granted would expire by limitation on the 19th day of February, 1914, applied to the State Corpora-

tion Commission of Virginia for the purpose of extending the charter of said corporation for a period without limit; and that in pursuance to said application the Corporation Commission of Virginia issued and certified to the secretary of the Commonwealth an amendment to the charter of the said The Portsmouth Gas Company, extending its corporate life to a period without limit;"

That the above-recited extension of the charter was procured by the company without compliance on its part with sections 124 and 125 of the Virginia Constitution of 1902;

That all the rights of the gas company in and to the use of the streets and alleys of the city not permitted to the general public ceased and determined on the 19th day of February, 1914, and that the action of the State Corporation Commission in granting an extension of the charter did not confer upon the company any rights in the streets and alleys not permitted to the public generally;

And, finally, that the gas company, by applying for and accepting the amendment to its charter on May 17, 1911, "thereby surrendered every exclusive and nonrepealable right which it enjoyed, and agreed thereafter to hold its charter, rights, privileges and franchises subject to the provisions of the Constitution of Virginia, especially sections 124 and 125. See section 158 of the Constitution of Virginia and Acts of the General Assembly of Virginia, 1902-3-4, page 437, section 1105-a, clause 8, Pollard's Code 1904."

[1] The legal effect of the demurrer was to admit the facts, but not the conclusions of law, stated in the information, and upon the facts as alleged we are of opinion that the demurrer was properly sustained.

[2] There has been no lapse or break in the corporate existence of the gas company since the date of its original incorporation, and the fact that the charter has twice been amended to avoid a forfeiture to which it otherwise would have been exposed, is material here only in so far as the

necessity for such amendments may bear upon a proper construction of the franchise granted to it by the municipality. And the same may be said as to the fact, stressed by counsel for the city, that the original franchise was granted to the company, and not in terms to its successors and assigns.

[3] We do not understand that any serious question is raised before us as to the legislative authority of the town or city to grant a franchise for the use of its streets. There are some contrary expressions in the brief for the city, but the case has, in the main, been presented to us upon the apparent assumption that the authority existed. Such authority, of course, was necessary. (Lile's Notes on Municipal Corporations (1922), sec. 58, and authorities cited); and it was conferred, if not otherwise, by section 23 of chapter 56, Code 1849. See *Va.-W. P. Co.* v. *Clifton Forge,* 125 Va. 469, 487, 99 S. E. 723.

The controversy presented by the record and the arguments of counsel with respect thereto give rise to these two main questions: First, what is the proper construction to be placed on the contract between the gas company and the municipality; and, second, what, if any, was the effect upon that contract of the amendment or extension of the company's charter granted by the State Corporation Commission in May, 1911?

[4, 5] 1. It can hardly be said that the language of the resolution adopted by the town council in 1853, unaided by extrinsic evidence, is sufficiently definite and unambiguous to constitute a safe guide in arriving at the intenton of the parties. No time is fixed therein for the termination of the period during which the company was to use and occupy the streets for the distribution of gas. The company was to have an *exclusive* privilege for fifteen years, and its property was to be exempt from town taxes for ten years, but the resolution does not expressly say, and does not neces-

sarily imply, that the right to use the streets was to cease at the end of fifteen years. We must look, therefore, to the situation of the parties when the contract was made, the subject matter, the purposes to be accomplished, and particularly to the subsequent construction which the parties themselves have placed upon it. *Virginian Ry. Co.* v. *Avis,* 124 Va. 711, 716, 98 S. E. 638; *Knopf* v. *R., F. & P. R. R. Co.,* 85 Va. 769, 778, 8 S. E. 787; *Butler Bros.* v. *Virginian Ry. Co.,* 113 Va. 28, 35, 73 S. E. 441.

[6, 7] It is quite true that grants of this character are to be strictly construed. *Norfolk & P. Traction Co.* v. *Norfolk,* 115 Va. 169, 173, 78 S. E. 545; *Blair* v. *Chicago,* 201 U. S. 400, 471, 26 S. Ct. 427, 50 L. Ed. 801, 830; *Detroit U. R. Co.* v. *Detroit,* 229 U. S. 39, 44, 33 S. Ct. 697, 57 L. Ed. 1056, 1059; *Russell* v. *Sebastian,* 233 U. S. 195, 205, 34 S. Ct. 517, 58 L. Ed. 912, 921. But, as said by Mr. Justice Hughes, in the case last cited, "this principle of construction does not deny to public offers a fair and reasonable interpretation, or justify the withholding of that which it satisfactorily appears the grant was intended to convey." And, in construing such grants, the courts have been careful to extend a reasonable and just protection to public utility corporations whose investments have necessarily been based upon calculations of future growth and development. *Russell* v. *Sebastian, supra; Louisville* v. *Cumberland Telephone & Telegraph Co.,* 224 U. S. 649, 664, 32 S. Ct. 572, 56 L. Ed. 934, 940; *N. O. T. & L. Co.* v. *State of Ohio,* 245 U. S. 574, 585, 38 S. Ct. 196, 62 L. Ed. 481, 488; *People ex rel. Woodhaven Gaslight Co.* v. *Deehan,* 153 N. Y. 528, 533, 47 N. E. 787.

The promoters of the project, Perdicaris and Hoy, through whom the franchise was granted to the contemplated and subsequently incorporated Portsmouth Gas Company, proposed to install, equip and operate a public service plant which would necessarily involve an initial expenditure of a

large sum of money, which would require many months for its completion, and which would in its development as a paying proposition involve further large outlays and extend over a long period of years.  The gas company at that time had not been incorporated, and for this reason nothing in the charter thereafter granted can be looked to in construing the resolutions of the town council.  The above-mentioned promoters from a northern city were manifestly undertaking the enterprise as an investment, and were asking an assurance for the proposed company of "protection and encouragement" from the town.  On the other hand, the town authorities desire to give "proof of the favor with which they would regard the erection of gas works to supply the citizens with a cheap, beautiful and much-needed light."  Both parties evidently contemplated a public utility of a permanent, costly and extensive character.

[8] That the franchise was not regarded as limited in its duration by the fifteen years during which it was to be exclusive is clearly shown by the fact that for more than sixty years the gas company has been "using the streets, alleys and lanes of the said town or city to furnish gas to the inhabitants of the town and of the city of Portsmouth, and has continuously during said period, pursuant to contracts made between the Portsmouth Gas Company and said town and city, in accordance with resolutions passed by the council of said town and city, furnished gas for the streets and public buildings of the municipality of the town and city of Portsmouth."  This fact, unequivocally alleged in the information, would seem to preclude any contention that the parties construed the franchise as limited in duration by the fifteen years mentioned in the resolution, or by the potentiality that the charter of the gas company might expire by legislative limitation, first in 1884 and again in 1914.

[9, 10]  It is conceded by counsel for the city that there is a clear distinction between a franchise to be a corporation and

a franchise to have and use and hold rights which are contractual and proprietary in their nature; and also that a corporation can take a franchise of the latter class for a period longer than its corporate existence. And it is further conceded that a franchise by a municipality to a public service corporation need not always be granted expressly or in writing, but may be conferred by implication. These propositions are important in this case, but it will be unnecessary, by reason of the concessions stated, to add to the length of this opinion by any discussion or citation of the authorities by which such propositions, if not admitted, might be sustained.

If we correctly grasp the contention of the city, it is that, as to the use of the streets and alleys, the only purpose of the resolutions by the town council in 1853 was to confer on the company an *exclusive privilege* for fifteen years, and that in all other respects the company has all the while been acting solely under the special legislative authority conferred by the charters granted to it in 1854 and 1884, respectively.

[11] This contention, as already indicated, seems to us to be conclusively answered by the city's own allegation in the information that the company has continuously, since 1854, used the streets and alleys pursuant to contracts made with the town and city. If, however, it can be supposed that the facts alleged do not conclusively answer such contention, and that the same is, therefore, debatable, then of course the pertinent provisions of the company's charter may well have a material bearing upon the construction to be placed upon the contract between the company and the municipality. In other words, if there be room for doubt as to whether the town or city intended to consent to the company's use of the streets, either for an indefinite period or for a period limited by the company's charter, then the question whether the company, in view of its charter rights,

needed any authority from the town other than the exclusive privilege and the tax exemption may well be considered in arriving at the intention of the parties. If such authority was not needed, it is not unreasonable to argue that it would not have been asked for or granted.

[12] The answer to this argument is twofold. In the first place, when the contract was made in 1853 between the town and the promoters, the charter of the contemplated gas company was not in existence, that charter having been granted by an act of the General Assembly passed some months later. Whether the proposed charter had ever been drafted at that time does not appear, and just what its provisions would be could not in any event have been known until the legislature acted. We cannot say, therefore, that the parties contracted under the influence of powers or limitations created by the charter.

[13, 14] But, in the second place, we are unable to accede to the view that the company, under its charter, would have had the unqualified right to use the streets without the consent of the town, and, therefore, in our opinion, the argument under consideration is fundamentally unsound.

Section 4 of the charter of the gas company, granted to it in 1854, was as follows: "The said company is hereby authorized to open streets, lanes, alleys and public squares of said town for the purpose of distributing gas; but the said company shall repair any injury done thereby at its own cost in such manner as shall be prescribed by the council of said town." But section 2 of that charter provided that the same should be "subject to all the provisions prescribed in chapters 56 and 57 of the Code of Virginia (Code 1849), except so far as this act may otherwise prescribe."

The provisions of chapters 56 and 57 of the Code of 1849, which are material in this connection are section 23 of chapter 56, and section 37 of chapter 57. Section 23 is as follows: "No company shall occupy with its works the

streets of any town until the corporate authority of the town shall have assented to such occupation, unless such assent be dispensed with by special provision of law." And section 37, while of somewhat doubtful application to a gas company, must, under the concessions in this case, be held to have limited the charter of the company to thirty years from the date of its passage.

. The charter of the company having been expressly made subject to the provisions of chapters 56 and 57 of the Code of 1849, "except so far as this act may otherwise prescribe," we think it is clear that under and by virtue of section 23, above quoted, it could not lawfully have occupied the streets without the consent, expressed or implied, of the city of Portsmouth.   It is argued on behalf of the city that the words "except so far as this act may otherwise prescribe," in section 2 of the charter, and the words "unless such assent be dispensed with by special provision of law," in section 23 of chapter 56 of the Code, may be so construed as to mean that section 4 of the charter, quoted above, gave the company the right to use the streets without the city's consent.   We do not think so.   Ever since the Code of 1849 went into effect, it has been the general policy of this State to require that the consent of municipalities shall first be given before their streets shall be occupied by the works of any corporation for public improvement.   (Code 1849, chap. 56, sec. 23; Code 1860, chap. 56, sec. 23; Code 1873, chap. 56, sec. 24; Code 1887, sec. 1093; Va. Const., sec. 124.) An exception to that policy, to be recognized, would have to be very clearly created.   There are reasons, apparent upon comparing the charter of the gas company with certain provisions of chapters 56 and 57 of the Code, which will readily show the propriety of, if not indeed the necessity for, the words "except so far as this act may otherwise prescribe," but we need not prolong this discussion by a recital of these reasons.   Suffice it to say that, in our

opinion, the provisions of section 23, above quoted, constituted a limitation upon the rights granted to the company by section 4 of its charter, and that in occupying with its gas works the streets of the town and city of Portsmouth, it acted under the joint authority derived from its charter and from the municipality.

The case of *Wheat* v. *Alexandria*, 88 Va. 742, 14 S. E. 672, is relied upon with great confidence by counsel for the city to sustain the proposition that the charter constituted an unconditional grant of authority to the gas company to open the streets, and that such grant did not depend upon any consent from the city. The decision in the *Wheat Case*, however, even if it could not be otherwise distinguished from the case before us, cannot be relied upon as authority here. This is clearly true, not only because the charter of the Alexandria Water Company was not, like that of the Portsmouth Gas Company, made subject to a limitation contained in the general law, but for the more conclusive reason that section 23 of the Code of 1849 was not in force when the act incorporating the Alexandria Water Company became effective. That act was passed March 22, 1850, and was in force from its passage. (Acts 1849-50, p. 145.) The Code of 1849 did not take effect until July 1, 1850. (Code 1849, chap. 216, sec. 1.) For this manifest reason, section 23 had no influence upon the decision of the *Wheat Case*.

The consent of the municipal authorities in Portsmouth was necessary to enable the company to occupy and use the streets, and this consent was undoubtedly given by the resolutions of the council, and by long subsequent conduct on the part of the town and city. This conduct was not limited to a mere acquiescence, but extended to an active recognition of the company's rights from 1854 to about the time this proceeding was instituted.

[15] "No particular mode of manifesting the municipal consent to the construction of a railroad or other public util-

ity in the city streets is prescribed by the usual constitutional provision, and in such case it has been said that so far as the Constitution is concerned, such consent may be either express or implied. And it has been held that the consent of the municipality required by statute *may be presumed* where the streets of the municipality have been used for a long period of years by the company under such circumstances as amount to a claim of right to use them." Dillon on Municipal Corporations (5th ed.), section 1227.

[16] "A franchise once granted to use the streets, with *no limit as to time,* and no right of revocation reserved, is usually construed as *perpetual,* after acceptance and user, so long as a grantee observes the conditions under which the grant is made." Lile's Notes on Municipal Corporations (3d ed., 1922), section 60. *Russell* v. *Sebastian,* 233 U. S. 195, 34 S. Ct. 517, 58 L. Ed. 912, 921. See also *Walla Walla* v. *Water Co.,* 172 U. S. 8, 19 S. Ct. 77, 43 L. Ed. 341, 345; *People* v. *Central Union Telephone Co.,* 192 Ill. 307, 61 N. E. 428, 85 Am. St. Rep. 338.

[17] 2. Having reached the conclusion that the resolutions of 1853, coupled with the subsequent course of dealings thereunder between the parties, must be construed as vesting in the gas company a franchise for the use of the streets and alleys for an indefinite period, we come now to the question as to the effect thereon of the extension of the charter applied for and allowed in May, 1911, by the State Corporation Commission. The answer to this question involves a consideration of sections 124, 125 and 158 of the Constitution of 1902. These sections, so far as material here, are set forth below.

"124. No * * * gas * * * company * * * shall be permitted to use the streets, alleys or public grounds of a city or town without the previous consent of the corporate authorities of such city or town." This section merely carried into the Constitution the legislative require-

ment which had been a part of the general law of this State since July 1, 1850.

Section 125 provides that no franchise to a gas company can be granted by a municipality except by sale to the highest bidder after advertisement, and limits all such franchises to a period of thirty years.

"158. Every corporation heretofore chartered in this State which shall hereafter accept or effect any amendment or extension of its charter shall be conclusively presumed to have thereby surrendered every exemption from taxation and every nonrepealable feature of its charter and of the amendments thereof, and also all exclusive rights or privileges theretofore granted to it by the General Assembly and not enjoyed by other corporations of a similar general character; and to have thereby agreed thereafter to hold its charter and franchises and all amendments thereof subject to all the requirements, terms and conditions of this Constitution and of any laws passed in pursuance thereof so far as the same may be applicable to such corporation."

Sections 124 and 125 have no application to this case. The gas company had acquired from the city the right to use the streets before the new Constitution was adopted. The sections in question are not intended to operate retrospectively. To hold otherwise would violate elementary rules of construction. *Arey* v. *Lindsey*, 103 Va. 250, 48 S. E. 889; Black on Interpretation, p. 20; Cooley's Const. Lim. (7th ed.), p. 97. Furthermore, it cannot be thought that a retrospective effect was intended by the framers of the Virginia Constitution, because that would impair the obligation of the contract and would deprive the company of its property without due process of law, and thus violate Article I, section 10, clause 1, of the United States Constitution, and section 1 of the fourteenth amendment thereto. *Russell* v. *Sebastian, supra; Va.-W. P. Co.* v. *Clifton Forge,* 125 Va. 469, 480-482, 99 S. E. 723.

32

[18, 19] Nor does section 158, above quoted, have any material bearing upon the question here at issue. The object of that section was to make it obligatory upon corporations which thereafter obtained amendments or extensions of their charters to surrender every exemption from taxation, and every nonrepealable feature of their charters and all exclusive rights or privileges theretofore granted to them, and to thereafter hold their charters and franchises and all amendments thereof subject to the terms of the new Constitution *so far as the same might be applicable.* We have here no question involving any exemption from taxation, any nonrepealable feature of a charter, or any exclusive right or privilege. The section of the Constitution under consideration cannot, in our opinion, be construed as interfering with any of the proprietary or contractual rights of corporations acquired prior to any amendments of their charters by the State Corporation Commission. The regulation and supervision of their business, and the extent of their corporate powers may be very materially affected by amendments procured under section 158, but their property rights are not thereby surrendered. Nothing contrary to this view was held or implied in *Winfree* v. *Riverside Cotton Mills,* 113 Va. 717, 75 S. E. 309, cited and relied upon by counsel for the city.

We are of opinion that the charter of the gas company granted by the General Assembly in 1854 empowered the company to lay its pipes in the streets of the town of Portsmouth only after obtaining the consent of the town; that the resolutions of the town council in 1853 gave such consent, and have been so acted under in subsequent years as to have conferred upon the gas company the consent of the municipality for an indefinite time, and to have constituted a contract which vested a property right in the company; that the limitation on the corporate existence of the company to thirty years in its first and second charters did not

operate to limit the period for which the consent of the city was given; that sections 124 and 125 of the Constitution were not intended to operate retrospectively, and have no effect on the question here involved; and that, from these conclusions, it necessarily follows that the limitations contained in section 152 of the Constitution have no application to the case.

There was no error in the judgment complained of, and the same will be affirmed.

*Affirmed.*