Statement.

# Richmond.

## AREY AND OTHERS v. LINDSEY AND OTHERS.

### November. 23, 1904.

1. CONSTITUTIONS—*Prospective Operation.*—Constitutions, as well as statutes, are construed to act prospectively only, unless, on the face of the instrument or enactment, a contrary intention is manifest beyond reasonable question. If the language admits of a substantial doubt on this point, courts will not construe the provision retrospectively. A constitutional provision cannot be given a retrospective operation unless that is the unmistakable intention of the words used, or the obvious design of the authors.

2. CONSTITUTIONAL LAW—*Municipal Charters—Amendments—Bridgewater.*—The Acts of Assembly passed prior to the adoption of the present Constitution, amending the charter and extending the corporate limits of the Town of Bridgewater, but providing that the act should not be effective until approved by a majority of the qualified voters residing in the new territory, is not affected by section 117 of the Constitution amending charters of municipal corporations so as to conform to all of the provisions of the Constitution, nor by section 126 of the Constitution, providing that no special act for the extension of the corporate limits of cities and towns shall be valid, although the election for the approval of the Act was not held until after the Constitution went into effect. The Constitutional provision last above referred to was intended only to affect future legislation on the subject of the extension or contraction of the corporate limits of cities and towns.

Appeal from a decree pronounced by the Circuit Court of Rockingham county, in a suit in chancery, wherein the appellees were the complainants, and the appellants were the defendants.

*Reversed.*

The opinion states the case.

*Conrad & Conrad,* for the appellants.

*John E. Roller,* for the appellees.

HARRISON, J., delivered the opinion of the court.

By an act of the General Assembly, approved February 16, 1901 (Acts of Extra Session 1901, p. 267), the charter of the town of Bridgewater was amended. This amendment, which extended the corporate limits, was, however, by the terms of the act, not to be effective until it had been ratified and approved by a majority of the qualified voters of Bridgewater precinct, residing within the corporate limits proposed by the amendment. To ascertain the wishes of those entitled to vote on the question, the act provided for three special elections, the first to be held on the fourth Thursday in May, 1901, and if the majority of the votes cast at this election were adverse to the amendment, another election could be ordered by the town council at any time after the expiration of six months from the first; and if the approval of a majority of the voters was not secured at the second election, then the council might order a third election, to be held after the expiration of twelve months from the date of the second.

The three elections provided for were held, and at the first and second the majority were against the amendment. The third election was held on the 23d of December, 1903, when the amendment was ratified and approved by a majority of the votes cast. Thereupon the appellees, claiming to own property that would be affected by the extension of the corporate limits, thus ratified and approved, presented their bill of complaint, praying for an injunction against the mayor and council of the town of Bridgewater, to restrain them from taking any

jurisdiction over the territory embraced by the amended charter, and from levying taxes, opening streets and alleys or exercising any acts of jurisdiction over the new territory, as constituting a part of the town of Bridgewater; and further praying that the election at which the amendment was ratified and approved be declared to be illegal and invalid, and that the proposed amendment be declared inoperative.

The injunction prayed for was awarded, and after a motion to dissolve was overruled, the mayor and council filed a demurrer and answer to the bill. The court overruled the demurrer, perpetuated the injunction, and retired the cause from the docket. This action of the lower court is called in question by the appeal under consideration.

It is insisted that the special act of February 16, 1901, amending the charter of Bridgewater, was abrogated and repealed by sections 117 and 126 of the Constitution, which went into effect July 10, 1902. The contention is that as the act in question, having for its object the extension of the corporate limits of the town, had not been given effect when the Constitution was adopted, it was without effect when the election under it was held in December, 1903.

To sustain this contention, it would be necessary to give a retroactive operation to the provisions of the Constitution relied on. It is well settled that constitutions, as well as statutes, are construed to operate prospectively only, unless, on the face of the instrument or enactment, the contrary intention is manifest beyond reasonable question. If the language admits of a substantial doubt on this point, the courts will not construe the provision retrospectively. A constitutional provision cannot be given a retroactive operation unless that is the unmistakable intention of the words used, or the obvious design of the authors. Black on Interpretation, p. 20; Cooley on Const. Lim. (7th Ed.), p. 97; Sutherland on Stat. Con., sec. 464; *Cutting* v. *Taylor*, 51 N. W. 949, 15 L. R. A. 691-693.

In the case cited above the Supreme Court of South Dakota says: "It is a general rule that neither Constitutions nor statutes should be so construed as to have retroactive effect, unless such intention is clearly expressed. . . . All legislation under the Constitution must be tested by its provisions, but a law valid when passed, and regularly enacted as then required, is not necessarily abrogated or repealed by a subsequent constitutional provision requiring the pursuance of other and different methods or forms of legislation than those which were adequate when such law was passed, for that would be to make such constitutional requirement retroactive; and so it must be held that the provisions of our State Constitution, prescribing the form and method of passage by the Legislature of appropriation bills, refer only to future legislation, or legislation under such Constitution. From the time of the adoption of the Constitution, the Legislature could make appropriations of public money only in the manner therein prescribed, but the adoption of the Constitution did not have the effect to repeal or abrogate appropriation laws theretofore regularly passed." Citing *State* v. *Kinney* (Mont.), 29 Pac. Rep. 89; *Cass* v. *Dillon*, 2 Ohio St. 607; *State* v. *Barbee*, 3 Ind. 258; *State* v. *Macon Co. Ct.*, 41 Mo. 433; *State* v. *Thompson*, 2 Kan. 432.

In the light of these authorities, the case at bar is free from difficulty. The two sections of the Constitution, relied on by appellees to support their contention, are as follows:

Section 117. "General laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in Article IV. of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house. But each of the cities and towns having at the time of the adoption of this Constitution a municipal charter may retain the same, except so far as it shall

be repealed or amended by the General Assembly: provided, that every such charter is hereby amended so as to conform to all the provisions, restrictions, limitations and powers set forth in this article, or otherwise provided in this Constitution."

Section 126. "The General Assembly shall provide by general laws for the extension and the contraction, from time to time, of the corporate limits of cities and towns; and no special act for such purpose shall be valid."

It is manifest that these provisions were not intended to abrogate or repeal the special act of February, 1901, or to affect in any way its validity and binding force. There is no indication of a purpose to repeal existing laws, valid when passed, whether special enactments or otherwise. It was not the method adopted by the Legislature for enlarging or contracting the corporate limits of cities and towns that the authors of the Constitution sought to control. Their manifest purpose was to meet and obviate the evils attending the passage of special acts, by providing that the enlargement or contraction of corporations should be accomplished in the future under a general law applicable alike to all cities and towns. So far as the Legislature provided for the extension of the corporate limits of Bridgewater, it had been done before the Constitution went into effect. The Constitution did not intend to abrogate a charter or any part of it because it had been passed as a "special act," but only such features of the charter as were in conflict with the Constitution, and to forbid special acts in the future.

For these reasons the decree appealed from must be reversed, and this court will enter such decree as the lower court ought to have entered, dissolving the injunction granted the appellees, and dismissing their bill with costs.

*Reversed.*