## Richmond

CAROLINA COACH COMPANY v. CITY OF NORFOLK AND VIRGINIA TRANSIT COMPANY.

November 28, 1960.

Record No. 5132.

Present, All the Justices.

The opinion states the case.

*John J. Wicker, Jr.* and *E. Ballard Baker* (*Wicker, Baker and Goddin,* on brief), for the appellant.

*Ralph H. Ferrell, Jr.* and *Leonard H. Davis, City Attorney* (*Virgil S. Gore, Jr., Assistant City Attorney; Thomas Lee Clark; Hunton, Williams, Gay, Powell and Gibson,* on brief), for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

This is a proceeding for a declaratory judgment and injunctive relief filed by the City of Norfolk against Carolina Coach Company, hereinafter called Carolina, wherein Virginia Transit Company has intervened, to determine whether Carolina, without the consent of the city, has the legal right to transport passengers between points in the territory recently annexed by the city from Princess Anne county and points within the former city limits. The city denies that Carolina has such right. Carolina claims that it has the right to perform such service by virtue of certain certificates of public convenience and necessity issued to it and its predecessor by the State Corporation Commission prior to the annexation of the territory.

Carolina moved to dismiss the petitions on the ground that prior to their filing it had filed with the State Corporation Commission a petition against the city to determine the identical question, and that the Commission had jurisdiction of the matter which was still pending before that tribunal.[1] Without waiving its motion, Carolina answered the petitions claiming the right to carry on such intracity transportation business by virtue of the certificates of convenience and necessity held by it.

Upon consideration of the pleadings and various motions to dismiss or strike them, the lower court decreed that it and not the Commission had jurisdiction of the issues between the parties, overruled Carolina's motion to dismiss, and enjoined and restrained it from transporting passengers from one point to another "within the present corporate limits of the city," including the annexed territory. From this decree Carolina has appealed, challenging the correctness of the lower court's holding on both the jurisdictional and main issue involved.

[1] The record shows that the city appeared before the Commission and challenged its jurisdiction to determine the question.

The underlying facts are not in dispute and are stated in the pleadings and motions of the respective parties. Pursuant to its comprehensive plan of regulation of passenger motorbus transportation within its corporate limits, the city, in 1944, granted to Virginia Transit Company the exclusive right and privilege to operate such a business over its streets. Since that date the Transit Company has continued to render such intracity bus service.

Effective on December 31, 1958, the city annexed a portion of Princess Anne county and required the Transit Company to extend its services into that area over agreed routes. For a number of years prior to such annexation, pursuant to certain certificates of convenience and necessity issued by the State Corporation Commission, Carolina had been operating a common carrier passenger service by motor vehicles "between Norfolk" or "between the corporate limits of Norfolk" and certain points in Princess Anne county.

Shortly after the annexation had become effective, the city notified Carolina that it must immediately discontinue transporting passengers between points within the former city limits and points within the annexed territory. When Carolina refused to comply with this notice the city council adopted a resolution objecting to Carolina's continued intracity operation and directing the institution of the present proceeding.

In support of its position that the Commission has jurisdiction of the matter in dispute, Carolina argues that under Chapter 12 of Title 56 of the Code (§ 56-273 ff.) the General Assembly has given the supervision, regulation and control of motor vehicle carriers to the Commission. It points out that § 56-275 expressly provides that "every such motor carrier is hereby declared to be subject to control, supervision and regulation by the Commission;" that § 56-276 provides that, "The Commission shall supervise, regulate and control all motor carriers not herein exempted, doing business in this State, and all matters relating to the performance of their public duties and their charges therefor;" and that that tribunal alone is empowered by § 56-278 to issue certificates of public convenience and necessity which prescribe the "route or routes" over which such carriers shall operate.

Moreover, Carolina says that since its vehicles are not "used exclusively in the transportation of passengers or property within the corporate limits" of the city, they are not among the vehicles excluded under Code, § 56-274(11).

We do not overlook these statutes. But they are not determinative of the issue before us. Code, § 56-273(k) settles the matter. This sec-

tion defines "a certificate of public convenience and necessity" issued by the Commission to motor vehicle common carriers. It expressly provides that "nothing contained in this chapter shall be construed to mean that the Commission can issue any such certificate authorizing intracity transportation." The effect of this broad and comprehensive language is to withhold from the Commission the power and authority to issue "any such certificate." And yet Carolina claims the privilege to operate under certificates which, it says, gives it the right to engage in "intracity transportation." Clearly, such authorization would be contrary to the plain language of the statute.

Carolina concedes that under § 56-273 (k) the Commission has no authority since the annexation became effective to issue a certificate permitting it to carry on an intracity transportation business in that territory, but says that such limitation does not affect a certificate already issued. The words, "can issue," it says, "speak to the present and future," but not to what "has been done." We do not agree with this restricted interpretation of the statute. To adopt that view would be tantamount to saying that while the Commission cannot issue a certificate authorizing intracity transportation on the date of the certificate, it can issue one which would authorize intracity transportation at a later date. Clearly, the language used contemplates that the Commission can issue no certificate which will now or hereafter authorize intracity transportation. Thus the plain purpose and effect of the statute are to remove intracity transportation from the jurisdiction and control of the Commission.

Consequently, we agree with the holding of the lower court that it and not the Corporation Commission had jurisdiction of the matter in dispute. As the court aptly expressed it, prior to the annexation the Commission had the "power" or jurisdiction to regulate Carolina's operations in that territory, but when the annexation became effective it "lost" that "power" or jurisdiction. This holding and decree of the lower court do not "interfere with the Commission in the performance of its official duties" in violation of § 156(d) of the Constitution.

On the merits Carolina argues that it holds certain certificates issued before the annexation which authorized it to operate through the territory later annexed by the city; that by virtue of these certificates it has developed a valuable business in that territory; that under Code, § 56-297, "No such certificate, * * * shall be suspended, revoked, altered or amended for any cause not stated in this section;" and that there is no provision in this or any other statute that the

rights of the holder shall terminate or be modified upon the annexation of any part of the territory through which the holder has been authorized to operate.

Moreover, Carolina contends that under the provisions of Code (1958 Replacement Volume), § 46.1-181(c), the city may not prohibit its using the streets along its established routes for the purpose of receiving and discharging passengers. This section provides that, "The governing bodies of counties, cities and towns may by ordinance, whenever in their judgment conditions so require: * * * (c) Prohibit the use of certain designated streets by private carriers for hire as well as common carriers, except for the purpose of receiving passengers or goods or making deliveries."

Section 46.1-181(c) orginated as an amendment by the Act of 1936, ch. 45, p. 70, to the Motor Vehicle Code of 1932 (Acts 1932, ch. 342, p. 613). It is found in Chapter III of that Code dealing with the "Regulation of Traffic" and is designed to authorize local authorities to regulate the operation of motor vehicle carriers along their established routes. But the section is not designed to prescribe the rights, duties and responsibilities of such carriers. These are found in Chapter 12 of Title 56 of the Code of 1950 (§ 56-273 ff.) dealing with "Motor Vehicle Carriers." It is pursuant to § 56-278 ff. of the latter chapter that the Commission is empowered to issue to motor vehicle carriers the certificates of public convenience and necessity which establish their routes and prescribe their rights, duties and responsibilities.

Under the provisions of § 46.1-181(c) local authorities may not prohibit carriers from using a street along an established route "for the purpose of receiving passengers or goods or making deliveries," provided they are authorized by law to do so. But it is not intended, as Carolina claims, to give a passenger carrier rights superior to those granted by the certificate of convenience and necessity issued to it and limited by § 56-273(k). To give to § 46.1-181(c) the meaning for which Carolina contends would be to say that despite the provision of § 56-273(k), withholding from the Commission the power and authority to issue a certificate "authorizing intracity transportation," a passenger carrier may nevertheless carry on such business along its entire route leading through a city.

We hold that after the annexed territory became a part of the city, Carolina was not authorized by the certificates which it held, or by Code, § 46.1-181(c), to carry on an intracity operation in this territory.

By virtue of the certificates issued to it, Carolina acquired no proprietary or property rights in the use of the public highways prior to annexation. Code, § 56-337. Nor does the fact that these certificates have become partly inoperative in the annexed territory constitute a revocation, alteration or amendment of them in violation of § 56-297. That section deals with the suspension, revocation or amendment by orders of the Corporation Commission. This is clearly indicated by the last sentence in the section which provides that from any order of the Commission "suspending, revoking, altering or amending any certificate," the holder shall have the right of an appeal to the Supreme Court of Appeals of Virginia as a matter of right.

■ When the certificates held by Carolina became inoperative in the annexed territory, the city was free to regulate and control intracity motorbus transportation within its limits in accordance with the authority which the General Assembly has delegated to it under the provisions of the city charter.[2] In *Kizee* v. *Conway*, 184 Va. 300, 306, 35 S. E. 2d 99, 101, we reaffirmed our holding in previous cases that the right to use city streets as a common carrier for hire is not an inherent right, but a privilege which may be granted or refused by the city in the exercise of its police power and at its pleasure. In that case we upheld the right of the city of Danville to deny to certain applicants a certificate of public convenience and necessity for the operation of taxicabs in the city.

In *Taylor* v. *Smith*, 140 Va. 217, 234, 124 S. E. 259, 263, we said the same thing in sustaining the denial by the city of Roanoke of an application to operate motorbusses for hire on the city streets. See also, *Long's Baggage Transfer Co.* v. *Burford*, 144 Va. 339, 344, 132 S. E. 355.

Upon the same reasoning, in the case before us the city of Norfolk had the right to deny to Carolina the privilege of transacting an intracity motorbus business within its corporate limits. Such denial having been shown, the lower court correctly granted the injunctive relief prayed for.

The decree appealed from is

*Affirmed.*

---

[2] Section 2(11) of the city charter empowers the city "to regulate the services to be rendered and rates to be charged by busses, motor cars, cabs and other vehicles for the carrying of passengers." Acts of 1918, ch. 34, pp. 31, 34.
Section 25 authorizes the city to "exercise full police power." *Id.*, p. 37.