156 So.2d 874 (1963)
SCENIC HILLS UTILITY COMPANY, Inc., a Florida corporation, Appellant,
v.
CITY OF PENSACOLA, Florida, a municipal corporation, Appellee.
No. E-138.
District Court of Appeal of Florida. First District.
October 10, 1963.
Rehearing Denied November 4, 1963.
*875 Hall, Hartwell & Hall, Tallahassee, and Hopkins, Hahn & Reeves, Pensacola, for appellant.
F. Churchill Mellen, Pensacola, for appellee.
TAYLOR, Associate Judge.
On May 5th, 1959, after compliance with the procedural requirements of Chapter 57-1313, Laws of Florida, the Board of County Commissioners of Escambia County granted to Appellant a franchise (purportedly exclusive) to supply water and sewerage services to an area within the county *876 but not within the limits of any municipality.[1]
The boundaries of the City of Pensacola have now been extended so as to embrace a part of the area included in this franchise.
Appellant, as plaintiff in the Circuit Court, filed a complaint against the City of Pensacola seeking a declaratory decree that its franchise is exclusive of any right or authority on the part of the City of Pensacola to construct competing water or sewer lines within the area embraced in Appellant's franchise.
The City of Pensacola resisted the entry of the decree sought and asserted the right, at its discretion, to construct competing facilities.
The Circuit Court entered a decree declaring that Appellant's franchise was not exclusive and did not prevent competition by the City of Pensacola within the disputed area. This appeal followed.
The decision of the Circuit Court was bottomed squarely on the determination that Chapter 57-1313, Laws of Florida, did not confer upon the County Commissioners of Escambia County the power to grant an exclusive franchise to Appellant and that, consequently, the attempt to make the franchise exclusive was ultra vires the Board of County Commissioners. The Court relied upon the decision of the Supreme Court of Florida in the case of Colen v. Sunhaven Homes, Inc., Fla., 98 So.2d 501.
We find that the law of the case is expressed in the Court's opinion in that case, but are constrained to hold that the Circuit Court misapplied the law as there stated.
County Commissioners possess only such powers are are conferred upon them by law. With respect to the granting of franchises they derive no powers from the common law and, consequently, they may exercise only such powers are are conferred by statute. Statutes conferring such powers are to be strictly construed against the county, and the power to grant an exclusive franchise exists only when conferred by express terms or necessary implication.
In the drafting of a statute there is no magic in the presence or absence of a particular word. It is the duty of the Court to examine the enactment as a whole in order to determine its meaning. The failure to use a word very commonly used to express a certain thought is a circumstance to be considered in arriving at the legislative intent. But the failure to use a particular word does not mean that the legislature cannot express the meaning of that word in other language. If the intent of the legislature is clear and unmistakable from the language used it is the duty of the Court to give effect to that intent. With these thoughts in mind we examine the statute:
Of course, the failure to use the word exclusive in describing the franchise that may be granted under the statute is a circumstance tending to indicate that the legislature did not intend to vest in the county commissioners power to grant exclusive franchises. But as against that we observe the following:
The statute requires that notice be published and a public hearing had before a franchise is granted. Section 4(b). Such precautions to protect the public interest would hardly be necessary as an incident to a mere permit  which is all that a non-exclusive franchise would amount to.
The county commissioners are authorized "[t]o include in any such franchise a license or easement over, upon and across the streets, roads, alleys, and other rights-of-ways in said County * * *". Section *877 4(e). This necessarily implies that the franchise authorized by the statute is something more than a mere license to lay lines along public easements.
The county commissioners are given power to supervise service and rates. Section 4(f). The public power to regulate utility rates is seldom, if ever, justified in a competitive field. Such power is essential where the utility enjoys a monopoly.
No franchise may be transferred to another party without notice, a public hearing, and a determination that the transferee meets the requirements fixed for an initial franchise holder. Section 4(g).
If the franchise holder fails to conform to his duties under the franchise and "properly furnish the service required by said franchise" his franchise may be restricted or revoked, but only after notice and a hearing. Section 4(h).
The statute provides that:
"(i) Any franchises granted pursuant to this Act shall be limited as follows:
* * * * * *
(2) Any person, firm or corporation using, in normal average consumption, more than 100,000 gallons of water per day, shall not be required to deal with said utility, but any such water user shall be at liberty to secure its water from such source or sources as it might desire. Any franchise for water shall also exempt and except therefrom any public agency producing water for resale at wholesale."
This paragraph unmistakably indicates a legislative intent that franchises granted under the statute shall be exclusive. Otherwise the provisions that a consumer using more than 100,000 gallons of water a day "shall not be required to deal with said utility" but * * * "shall be at liberty to secure its water from such source or sources as it might desire", would be absolutely meaningless. If only those using in excess of 100,000. gallons a day are not required to buy from the holder of the franchise, it necessarily follows that those using smaller amounts must buy from the utility and the franchise of the utility is necessarily exclusive as to all those not expressly exempt. The second sentence of the last quoted paragraph is equally indicative of a legislative intent that a franchise might be made exclusive. Otherwise there would be no reason whatever to require the exemption and exception of "any public agency producing water for resale at wholesale." (Emphasis supplied). Use here of the words "at wholesale" can serve only to emphasize that the legislative grant of power to the county commissioners included the authority to make franchises authorized by the statute free from competition in retail sales even from public agencies. It will be noted that this language does not exempt a public agency selling at retail.
Subsection (k) of Section 4[2] again clearly indicates the legislative intent that the franchises authorized may be made exclusive. Under it an existing utility may secure a non-exclusive franchise without notice or hearing, but in order to secure an exclusive franchise it must comply with the prescribed procedure and meet the other requirements of the act. Admittedly Appellant was not operating a public utility when the act was passed. What reason could the legislature have in permitting existing utilities to secure exclusive franchise *878 after complying with the provisions of the act, and denying such franchise to others? Or, stated a little differently, did the legislature intend to give power to the county commissioners to grant exclusive franchises to one class of applicants and not give them power to grant exclusive franchises to another class of applicants?
The conclusion appears inescapable that the thinking of the writer of subsection (k) was simply that existing utilities could be granted non-exclusive franchises  mere licenses  without notice or public hearing, but that if they wanted exclusive franchises they must proceed as other applicants to give notice and at a public hearing make a showing justifying the granting of the franchise sought.
For these reasons we hold that the Board of County Commissioners of Escambia County was authorized by Chapter 57-1313, Laws of Florida, to grant to Appellant an exclusive franchise for the operation of water and sewerage utilities in territory within Escambia County and outside the limits of any municipality as then existing. Once the franchise was granted it vested in the owner rights that cannot be abrogated or destroyed by the expedient of expanding the boundaries of a pre-existing municipality or creating a new one.
Appellee argues in the alternative that Chapter 57-1313 is invalid because it is in violation of Section 20, Article III, of the Constitution of Florida, F.S.A. We do not think that question is properly before us. There is nothing in the record to indicate that it was presented to or considered by the Circuit Court. Certainly it was not decided by that Court. If and when it is, an appeal will lie only to the Supreme Court.[3]
The decree appealed from is reversed, but without prejudice to the right of the Appellee to apply to the Circuit Court for leave to amend its responsive pleadings in such manner as to raise the question of the constitutional validity of Chapter 57-1313, and to the jurisdiction of that Court to grant such application and then pass upon the constitutional questions presented.
Reversed.
WIGGINTON, J., concurs.
STURGIS, C.J., dissents.
STURGIS, Chief Judge (dissenting).
I am confronted with an able opinion which, like Khayyam's grape, "can with Logic absolute the Two-and-Seventy jarring Sects confute"; but I am obliged to dissent because (1) I do not think the legislative intent is conclusively demonstrated to support the conclusions reached, and (2) I am persuaded that the decision of the Florida Supreme Court in Colen v. Sunhaven Homes, Inc., Fla., 98 So.2d 501 (1957) is controlling precedent in support of the decree appealed.
Chapter 57-1313, Laws of Florida, is a local law applicable only to Escambia County. As aptly stated by the majority, county commissioners have no power under the common law to grant franchises and may exercise only such powers as are conferred by statute; further, that statutes conferring such powers are to be strictly construed against the county, and the power to grant an exclusive franchise exists only when conferred by express terms or necessary implication.
The concept of the exercise by county governments of powers of the nature here involved is of comparatively recent origin. It finds its roots alongside the trend to the development of urban communities which, as is a matter of common knowledge, generally depend for existence on employment in and commerce afforded by the near-by *879 municipality but contribute little if anything to the expense of operating the municipal government. And we are aware that these circumstances have produced increasing difficulties and tensions between the county and municipal governments in many parts of the state, resulting in complicated and unhealthy situations for both. I am quite satisfied that legislative delegations representing such areas are fully cognizant of these conditions, politically and otherwise. It is difficult for me to believe that the legislative delegation representing Escambia County, in which the city of Pensacola is the controlling political area, had any intention by the act in question to restrict the generally exclusive power of the city of Pensacola to grant within the confines of its territory franchises of the character in suit.
I recognize that the territory here involved has been added to the city since the enactment of the act in question, but the fact is that the appellant has not extended its franchise operations to that area. I also recognize that under the facts of this case it is likely the city could with little expense condemn to its exclusive use the franchise rights purportedly given to appellant under the act. I lean to the view, however, that where, as here, the franchise has not been exercised within the municipal area affected, the better rule of construction would be to treat it as extinguished to that extent.
That conclusion would not necessarily apply to all types of franchises. Water supply in all of its phases is so vital to the health, fire protection, and general welfare of persons living in congested areas that in my opinion the immediately responsive and responsible governmental agency  in this instance the city  should have full control of it within its territorial limits.
The provisions of the act in suit are concededly more specific to the conclusion reached by the majority than is the act passed on by the Supreme Court in Colen v. Sunhaven Homes, Inc., supra, but in my opinion the principle of non-exclusiveness as applied to the water franchise in that case should apply with equal force to the case on review.
I would affirm.
NOTES
[1] Appellant had not previously operated a public utility in this area. The materiality of this fact will presently appear.
[2] "(k) Any person operating a public utility as herein defined at the time this Act becomes law may apply within one year hereafter for a franchise hereunder and the County Commissioners, without the necessity of public hearing, shall grant, without requiring bonds, a non-exclusive franchise to such applicant with respect to the area or areas now being served, provided however, if any such person shall desire an exclusive franchise then the procedure, requirements, conditions, limitations and terms contained in subsections 4(a) to 4(j) inclusive shall apply to any such application."
[3] Article V, Section 5, Constitution of Florida, Stein v. Darby, Fla., 134 So.2d 232; Dade County v. Kelly, Fla.App., 149 So.2d 382.