## Richmond

## Town of Culpeper v. Virginia Electric and Power Company and Northern Piedmont Electric Cooperative, Inc.

August 28, 1974.

Record No. 730938.

Present, All the Justices.

*W. H. Jolly (Helen M. Jeffries, Town Attorney for the Town of Culpeper; Kime, Jolly, Clemens & Canterbury,* on brief), for plaintiff in error.

*Evans B. Brasfield; D. French Slaughter, Jr. (E. Milton Farley, III; T. S. Ellis, III; Hunton, Williams, Gay & Gibson; Button, Slaughter & Yeaman,* on brief), for defendants in error.

Harrison, J., delivered the opinion of the court.

The question here is whether a franchised public utility operating electric distribution lines and facilities in a specified rural area outside the corporate limits of a town has a right to continue serving its customers after the area is annexed by the town.

Virginia Electric and Power Company and Northern Piedmont Electric Cooperative, Inc., had for a number of years owned and operated electric distribution facilities within that portion of Culpeper County which was annexed into the Town of Culpeper

as of December 31, 1967. Approximately 1,300 homes and businesses were furnished electric service. Appellees held certificates of public convenience and necessity granted by the State Corporation Commission under the Utility Facilities Act, Chapter 10.1 of Title 56 of the Code of Virginia. Their facilities in the disputed area were installed pursuant to such certificates, private easement agreements and highway crossing permits and originally cost a total of $983,700.

This case had its genesis in 1966 when the Town of Culpeper sought to annex an area, containing 4,313 acres in Culpeper County, which was then being served by the two companies. VEPCO and Northern Piedmont intervened in the annexation suit to protect their interests. Subsequently the town agreed that, if annexation were decreed, it would grant each utility a 5-year franchise to occupy the streets, alleys and public grounds in that portion of the annexed area which each company was then authorized to service. The agreement provided that neither party waived any rights with respect to the disputed question of whether the utilities could continue to occupy streets within the annexed area without a franchise from the town. After annexation the town granted to each utility the promised franchise which expired on November 5, 1973.

In May, 1972, the Town Council of Culpeper directed an expansion of the town's municipal electric distribution system into the annexed area and authorized negotiations with VEPCO and Northern Piedmont looking to the acquisition of their distribution lines and facilities in the area. When negotiations proved fruitless the town instituted a declaratory judgment proceeding, its purpose being, in effect, to oust VEPCO and Northern Piedmont from the town. This would result in the town only providing electric service to those customers served by appellees. Appellees resisted this effort as an infringement of their constitutionally protected property rights and an impairment of the valid exercise of the state's police power. The trial court held that appellees are "legally and properly occupying and using the streets, alleys and public grounds of the Town of Culpeper within those portions of the area annexed to the Town for which they hold certificates of public convenience and necessity from the State Corporation Commission", and that the two companies "have the legal right to sell electric current and power to customers within those portions of said area". The town appealed.

The position of the Town of Culpeper is that when by annexation it expanded its corporate limits on December 31, 1967, the certificates of public convenience and necessity, previously issued by the State Corporation Commission to VEPCO and Northern Piedmont, under and pursuant to Code § 56-265.2, became ineffective, insofar as they covered the newly annexed area. It concedes that, prior to annexation, the area was subject to the jurisdiction of the Commission and that the Commission had allocated the same to either VEPCO or Northern Piedmont. It argues that upon annexation this territory became subject to the jurisdiction and control of the town; that the Commission has no further jurisdiction for it has no authority to authorize the utilities to use the streets, alleys and public grounds of the town; and that, absent a duly authorized franchise from the town, the right and authority of the utility companies to continue to maintain their lines within the annexed territory, to make use of the streets, alleys and public grounds, and to service their customers, automatically ceased.

The town cites Article IX, Section 2 of the Constitution of Virginia (formerly § 156) and Code §§ 56-232 and 56-265.1 in support of its argument that municipal corporations are excluded from the jurisdiction of the Commission. It points to Article VII, Section 8 of the Constitution (formerly §124) and Code § 15.1-375 which provide, in part, that "No . . . electric light or power . . . company [or] . . . association . . . shall be permitted to use the streets, alleys, or public grounds of a city or town without the *previous* consent of the corporate authorities of such city or town". (Italics supplied.)

Admittedly, where a utility proposes to enter an incorporated town and intends to install its facilities therein, the utility must first obtain the consent of the municipality. However, we are not dealing here with a utility that seeks an original entry into a town, but with franchised companies which have been serving the area involved for approximately twenty years prior to its being annexed by the town.

Article IX, Section 2 of the Constitution charges the Commission "with the duty of administering the laws made in pursuance of this Constitution for the regulation and control of corporations doing business in this Commonwealth". It gives the Commission the power and charges it "with the duty of regulating the rates, charges, and services and, . . . the facilities

of ... electric companies". Code § 56-265.3 specifically prohibits a public utility from engaging in and furnishing public utility services "within the State" without first having obtained from the Commission a certificate of public convenience and necessity authorizing it to furnish such service.

These provisions of law confer on the State Corporation Commission exclusive and paramount jurisdiction and require it to regulate electric companies within the state. This means both within and without municipal boundaries. The only exclusion is a municipally owned utility operation within the municipality, and this by express constitutional and statutory provision.[1] Privately owned utilities operating within municipal boundaries are not excluded from the jurisdiction of the Commission.

A municipality is a creature of the state and has only such power and authority as may be granted to it by the Constitution or by statute. Its power over its streets and public places is derived from the state under the state's police powers. The certificates granted VEPCO and Northern Piedmont were issued before the disputed area was annexed and at a time when the town did not have any jurisdiction or power over the area. The Commission did have such jurisdiction and power. The question is whether certificates of the type granted are governmental franchises creating property rights that are entitled to protection. Appellees argue convincingly that the franchises they hold are valuable property rights. They cite from McQuillen on *Municipal Corporations*, Volume 2, § 7.46, p. 523 that "The annexation ... of territory must not impair vested rights ...", and quote from Code § 56-265.6, which prescribes how rights granted under the Utility Facilities Act may be taken away, as follows:

"[N]o such certificate shall be revoked, altered or amended (except upon application of the holder thereof) unless the holder thereof shall wilfully fail to comply, within a reasonable time

[1] Code § 56-265.4:1 deals primarily with municipal corporations furnishing electric public utility service or provision of facilities therefor outside their political boundaries, their entering into agreements with affected public utilities, and the supervision the Commission exercises over such transactions. This section contains the following pertinent provision which provides:

"Nothing herein shall be construed to increase, decrease or affect any rights a municipal corporation, public utility or other governmental body may have with regard to supplying electric public utility service in areas heretofore or hereafter annexed by such municipal corporation."

to be fixed by the Commission, with the lawful order of the Commission or with the lawful rule or regulation of the Commission, or with the term, condition or limitation of such certificate, found by the Commission to have been violated by such holder. *No such certificate shall be suspended, revoked, altered or amended for any cause not stated in this section.*" Va. Code § 56-265.6. (Italics supplied)

We find no provision in the Constitution or in any statute that permits us to hold that a certificate of public convenience and necessity, such as was granted by the Commission in this case, can be nullified by an annexation proceeding over which neither the Commission nor the utilities have any control.[2] And no procedure exists in Virginia under which annexing towns and cities can acquire by eminent domain the facilities of a franchised utility serving an area which is annexed by such municipalities.[3]

Appellees further quote from *Snidow* v. *Board of Supervisors*, 123 Va. 578, 96 S. E. 810 (1918):

"[A] private property right—an incorporeal hereditament— acquired from the Commonwealth, granted by legislative authority exercised by the circuit court per its order of June 21, 1892, above referred to, which granted to appellants the franchise for such ferry. [Citations omitted.] And to the extent of the right granted by such franchise, such property right is undoubtedly protected by sec. 58 of Art. 4 of the Constitution of Virginia of 1902, which provides that the legislature '** shall not enact any law whereby private property shall be taken or damaged for public use without just compensation.' [Citations omitted.] " 123 Va. at 595, 96 S. E. at 814.

The weight of authority, and the principle with which we

---

[2] *See: Scenic Hills Utility Co.* v. *City of Pensacola,* 156 So. 2d 874 (Fla. App. 1963); *Unity Light & Power Co.* v. *City of Burley,* 92 Idaho 499, 445 P. 2d 720 (1968); *Mississippi Power & L. Co.* v. *Capital Elec. Power Ass'n,* 222 So. 2d 399 (Miss. 1969); *Capital Electric Pow. Ass'n* v. *Mississippi Pow. & L. Co.,* 150 So. 2d 534 (Miss. 1963), *appeal dismissed,* 375 U. S. 77 (1963); *Delta Electric Power Ass'n* v. *Mississippi P. & L. Co.,* 149 So. 2d 504 (Miss. 1963); *Duke Power Co.* v. *Blue Ridge Electric Member. Corp.,* 253 N. C. 596, 117 S. E. 2d 812 (1961); and *Caddo Electric Cooperative* v. *State,* 391 P. 2d 234 (Okl. 1964).

[3] *See: Flecha Caida Water Company* v. *City of Tucson,* 4 Ariz. App. 331, 420 P. 2d 198 (1966).

agree, is that a certificate of public convenience and necessity is a franchise and is a property right. As such it is entitled to the protection of the courts. We find substantially the same holding in *Capital Electric Pow. Ass'n* v. *Mississippi Pow. & L. Co.*, 150 So. 2d 534, 540 (Miss. 1963), *appeal dismissed*, 375 U. S. 77 (1963), where, in referring to a certificate of public convenience and necessity that had been granted to an electric power association to do business in an area which was later annexed by a municipality, the court said: "[A] certificate of convenience and necessity issued by the Commission is a valuable right which is entitled to protection by the courts." [4]

The effect of the town's argument is that Article VII, Section 8 of the Constitution of Virginia (which requires previous consent of the corporate authorities of a town before an electric power company may use the streets, alleys or public grounds of the town) should be applied retroactively. Courts are reluctant to give retroactive effect to a statute, and the general rule is that statutes are to be construed to operate prospectively only unless a contrary intention is manifest and plain. *McIntosh* v. *Commonwealth*, 213 Va. 330, 191 S. E. 2d 791 (1972). We think it clear that the intention of the framers of the constitutional provision in question was to empower towns to prohibit a utility from *entering* the town without prior consent. The intent was not to require the ouster of a utility and its facilities from an area where such facilities were already franchised and lawfully in existence and the utility was operating therein prior to such area becoming a part of a town. Otherwise we would be holding that VEPCO and Northern Piedmont cannot lawfully use the streets of Culpeper, for it is impossible for these two utilities to obtain "previous" consent from the town. If we applied the section of the Constitution retroactively, it would deprive VEPCO and Northern Piedmont of their franchise to service the area in controversy, a franchise which constitutes a valuable property right.

In support of its position the town relies strongly on *Coach Company* v. *City of Norfolk*, 202 Va. 322, 117 S. E. 2d 131 (1960).[5]

---

[4] To the same effect see also: *Public Service Co. of Colo.* v. *Public Utilities Com'n*, 483 P. 2d 1337, at 1339 (Colo. 1971); *Scenic Hills Utility Co.* v. *City of Pensacola*, 156 So. 2d 874, at 878 (Fla. App. 1963); *State* v. *Johnson Circuit Court*, 112 N. E. 2d 429, at 432 (Ind. 1953); and 36 Am Jur 2d *Franchises* §28 (1968).

[5] Appellant also relies upon *Appalachian Power Company* v. *Town of Salem* (1963), in which we denied an appeal from the Circuit Court of Roanoke County. There

There a bus company was certificated by the State Corporation Commission to render bus service in an area that subsequently was annexed by Norfolk. This court held that the company could not continue to render such intracity service without the consent of the city, notwithstanding the certification it held from the Commission. Unlike the provisions of the Constitution of Virginia and the Utility Facilities Act which control the case under review, and which apply to all "public utility service within the State", our decision in *Coach Company* depended upon an interpretation of Chapter 12 of Title 56 relating to common carriers. Specifically we decided the case on the basis of Code § 56-273 (k) which includes the following language:

"[B]ut nothing contained in this chapter shall be construed to mean that the Commission can issue any such certificate authorizing intracity transportation."

And we also considered Code § 56-337 which concerns property rights in highways conferred by Chapter 12, and which provides as follows:

"Nothing in this chapter shall confer any proprietary or property rights in the use of the public highways."

After stating that Code § 56-273 (k) settled the matter, we held that the effect of the comprehensive language in that section was to withhold from the State Corporation Commission the power and authority to issue any such certificate authorizing intracity transportation and that the privilege claimed by Coach Company to engage in intracity transportation under its certificate was contrary to the plain language of the statute.

---

Appalachian had agreed that Salem should have all customers whose power requirements were 50 horsepower or less and the agreement applied to the annexed area. The lower court noted that "the matter in the final analysis resolves itself into an interpretation of the franchise provisions and the contract of 1960". The town points to a statement in *Appalachian* to the effect that the State Corporation Commission did not have jurisdiction in the Town of Salem and that any certificates of public necessity and convenience held by Appalachian prior to annexation "became ineffective after annexation in the area annexed". The statement is dictum and we are not persuaded thereby. It is noted that the Judge Designate in *Town of Front Royal* v. *Potomac Edison Co. of Va.* (1969), Circuit Court of Warren County, reached the opposite conclusion, and that in the instant case the trial judge adopted the reasoning of *Front Royal*.

*D. H. Moore, et al.* v. *Town of Salem*, SCC Case No. 10277 (1951), also cited by appellant, did not involve the jurisdiction of the State Corporation Commission within the municipal boundaries, or hold that the Commission does not have jurisdiction over a non-municipal public utility operating within municipal boundaries.

*Com'th* v. *Portsmouth Gas Co.*, 132 Va. 480, 112 S. E. 792 (1922), holding that franchise rights are not terminated by the adoption of a constitutional provision after the granting of a franchise, is consistent with our conclusion here that Article VII, Section 8 of the Constitution of Virginia applies only within the corporate limits of a town and only where a utility seeks to enter the town for the purpose of supplying electricity. In *Portsmouth* the court dealt not only with retroactivity but also noted that a franchise held by a gas company to use city streets was a property right. There we said:

"Sections 124 and 125 have no application to this case. The gas company had acquired from the city the right to use the streets before the new Constitution was adopted. The sections in question are not intended to operate retrospectively. To hold otherwise would violate elementary rules of construction. *Arey* v. *Lindsey*, 103 Va. 250, 48 S. E. 889; Black on Interpretation, p. 20; Cooley's Const. Lim. (7th ed.), p. 97. Furthermore, it cannot be thought that a retrospective effect was intended by the framers of the Virginia Constitution, because that would impair the obligation of the contract and would deprive the company of its property without due process of law, and thus violate Article I, section 10, clause 1, of the United States Constitution, and section 1 of the fourteenth amendment thereto. [Citations omitted.] " 132 Va. at 497, 112 S. E. at 797.

We observe that utilities not only have a right to provide services to the area covered by their franchises, but are charged by law with a duty to furnish such services. In discharge of this duty they must provide for existing and current needs of customers, and anticipate future needs and growth, necessitating large expenditures in capital outlay. To deny the appellees the use of their facilities within the newly annexed area of the Town of Culpeper, and the right to service those customers within that area who desire to be serviced by appellees, would destroy a vested and valuable right they possess and cause the companies to sustain a non-compensable loss.

The judgment of the court below is

*Affirmed.*