## CIRCUIT COURT OF PAGE COUNTY

Town of Luray

    v.

Potomac Edison Co.

April 3, 1984

Case No. (Chancery) 2609

By JUDGE ROBERT K. WOLTZ

This suit seeks a declaration as to the right of the defendant (Company) to occupy and use the streets and other public ways and places of the complainant (Town) for the poles, wires and other facilities of the Company in its distribution of electricity within the Town.

The parties have stipulated to the essential facts. The Town is a municipal corporation under the laws of this State. The Company is incorporated under the laws of this State as a public utility corporation and holds a certificate of public convenience and necessity under the Utility Facilities Act, Code §§ 56-265.1, *et seq.*, and under that certificate serves a geographic area which includes the Town. No other public utility is certificated under the Act to serve this area.

The Company occupied the streets and other public places of the Town pursuant to a franchise granted by the Town covering the period July, 1951, to July, 1977, when it expired. Prior to expiration of that franchise the Company prepared and the Town published a proposed franchise with request for bids thereon. *See* Constitution of Virginia, Article VII, § 8 and § 9; Code §§ 15.1-307

to 15.1-316 and 15.1-375. The Company submitted a bid which the Town neither accepted nor specifically rejected but offered to continue the terms of the old franchise for a period of two years, which offer the Company declined.

The Company continued to use the streets, etc. of the Town for its distribution facilities asserting an obligation to do so under its certificate of convenience and necessity. In 1980 the Town and Company entered a written agreement allowing the Company to occupy the streets for a period no longer than five years from expiration of the old franchise or until final decision on the issues in this cause. This agreement has now expired by its own terms. The Town has taken no legal steps to seek to obtain permission to acquire by eminent domain the Company's facilities within the Town.

The parties take diametrically opposed legal positions. The Town asks a declaration that the Company has no continuing right without the previous consent of the Town being had to occupy with its distribution facilities the public ways and property of the Town and that such present occupation by the Company is unlawful. By cross-bill the Company seeks a declaration that it is not so occupying unlawfully, that the Town act affirmatively on the advertised franchise ordinance and that a mandatory injunction be awarded requiring the Town to act favorably on the bid of the Company pursuant to the franchise advertisement. The Town says the Company cannot legally remain on its streets without a franchise granted in accordance with law, and the Company says it can and must occupy the streets to carry out its obligations as a certificated public utility.

This impasse poses more than the usual difficulties in view of the nature of the parties, both being corporations strongly affected with the public interest, and the fact that in today's world a continuing supply of electric power is virtually indispensable for public, industrial, commercial, residential, health and other purposes. The loss of such power to all consumers within the Town would be a disaster of such magnitude that a court of equity should exercise its jurisdiction to the fullest extent it properly can to avoid if at all possible disruption of electric service which would be not merely inconvenient but catastrophic.

A few preliminary points should be disposed of. Section 15.1-309 states, "The city or town shall have the right to reject any and all bids and shall reserve this right in the advertisement hereinbefore required." The Company takes the position that the reservation of this right was not contained in the advertisement, as a consequence of which the Town has lost the right to reject the sole bid of the Company. Generally advertisement for bids is a request for offers to be made and generally the offeree may reject any and all offers. This statute on advertising for franchise bids takes cognizance of the general principle and states in mandatory language the right of the municipality to reject the bids. That much of the quoted provision is substance.

Also in mandatory terms is the requirement that this bid rejection reservation appear in the advertisement. This provision is procedural. It is the Court's opinion that in this instance the substantive provision is of the essence and that the procedural provision is not of the essence and as a consequence substance should prevail over procedure. In addition, the Company itself prepared the advertisement for publication. It has not claimed that it has been misled or injured by this omission, for which it is responsible, and should not now be allowed to take advantage of it.

Also as a preliminary, the Company's request for a mandatory injunction should be disposed of. In the Court's view, acceptance or rejection of a bid by a town council is a legislative function and under the doctrine of separation of powers this Court cannot usurp the legislative prerogative or mandate what its legislative actions shall be. *See Board of Supervisors* v. *Allman* and *City of Richmond* v. *Randall*, 215 Va. 434 and 506 (1975). Nevertheless it may lie within the prerogative of this Court to order the Town to act, one way or the other, concerning the bid for the franchise, that is to accept it or reject it. This will not be necessary as in the opinion of the Court the Town has already rejected the bid. By advertising the franchise the Town asked for bids; the Company submitted a bid (determined above to be an offer). In response to this offer the Town proposed a two-year extension of the old franchise. This constituted a counter-offer which under elemental principles of contract law was effective to reject the offer.

The Court agrees with the Company that under its certificate of public convenience and necessity granted pursuant to the Utility Facilities Act it has the authority and obligation to supply its electric services to customers lying within its certificated area, including those in the Town. There is, however, an exception to this general rule as to portions of the certificated area lying within the boundaries of municipalities. As a prerequisite to that authority and obligation to supply services within municipalities are the constitutional and statutory franchise requirements for the establishment of the Company's facilities on public streets and other public property. Obviously without a franchise allowing use of the streets for distribution facilities of the company it cannot practically supply its services within the Town. Note that § 15.1-375 makes it a misdemeanor for electric power and other named utilities to use the streets and public grounds of a municipality without previous consent of the municipal corporation. (There is an exception to this requirement for a franchise where the electric utility has serviced unincorporated territory which is later annexed by a municipality. *Culpeper* v. *VEPCO*, 215 Va. 189 (1974).

On the other hand, while the Company has no right without the previous consent of the Town to use the latter's public streets and property for its facilities, *Culpeper, supra* at page 191, under the circumstances of this case the Court is unable to declare that the occupation of the Town's streets and public lands by the Company for its facilities is unlawful. It should be remembered that before it expired the Company held a franchise from the Town for such occupation for many years, that after the expiration the parties voluntarily agreed the Company could continue to occupy the streets, etc. for its facilities for a period not to exceed five years and that since the expiration of the five years matters have continued as before.

Considering this and the indispensable nature of the services which the Company is supplying within the Town and the high degree of duty and obligation both Town and Company owe to the inhabitants and others of the Town to see that electric services are supplied, an implied contract between the parties has arisen under which the Company has an implied right to use the streets and other public areas for its poles, wires and other

facilities, such right being indefinite in duration and subject to cancellation by the Town on notice of termination given sufficiently in advance so as to enable the Company a reasonable period in which to remove its facilities or in the alternative to afford the Town time and opportunity in some way to make available a substitute means of electrical distribution within the Town. *See* 64 Am. Jur. 2d, *Public Utilities*, § 76 with footnoted authorities.

A decree will enter finding that the certificate of public convenience and necessity held by the Company does not entitle it to occupy the streets and other public property of the Town without the latter's consent; that under present circumstances in view of past and continuing relationship between Town and Company respecting such occupation there exists an implied consent therefor on the part of the Town as a consequence of which the Company has an implied right to such occupation; that the implied consent and implied right are indefinite in duration, but that the Town has the right expressly to withdraw its consent, thereby terminating the Company's right subject to the Town's giving notice of termination a sufficient time in advance to enable the Company to remove its installations or to allow the Town to provide reasonably adequate substituted electric service, with or without use of installed facilities now or later owned by the Company, all in order that the safety, health and welfare of the inhabitants and others of the Town may be preserved and protected.

In view of the safety, health and welfare last mentioned, which is central to the Court's resolution of this case, the parties are urged to reach an accommodation with each other by all means reasonably at their disposal.