# THE POTOMAC EDISON COMPANY

## V.

# TOWN OF LURAY

Record No. 841372

November 25, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ.

*J. Sloan Kuykendall (J. Sloan Kuykendall, III; Kuykendall, Wetsel & Kuykendall, P.C.*, on briefs), for appellant.
*William C. Maxwell (W. H. Jolly; Jolly, Place, Fralin & Prillaman, P.C.*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

We granted this appeal to consider whether the Town of Luray (the Town) has a duty to grant Potomac Edison Company (Potomac Edison) a second franchise to provide electric service to the community.

Potomac Edison is a public utility engaged in the generation, distribution, and sale of electricity. The State Corporation Commission issued Potomac Edison a certificate of public convenience and necessity pursuant to the Utility Facilities Act, Chapter 10.1 of Title 56 of the Code. By virtue of that certificate, Potomac Edison is authorized and required to serve a geographical area including Page County and the Town of Luray. Potomac Edison is the only electric power utility certified to serve that area.

On July 13, 1951, the Town granted Potomac Edison a franchise to occupy its streets and other public places for a period of 26 years. Potomac Edison installed lines, poles, and other transmission and distribution facilities necessary to provide service to the Town and its inhabitants. Throughout the life of the franchise, Potomac Edison received no complaints from customers regarding the quality of the service rendered.

Prior to the expiration of the franchise on July 13, 1977, Potomac Edison drafted a proposed 40-year franchise which the Town incorporated in a bid advertisement published in the *Page News and Courier*, once a week for four weeks. Potomac Edison, the sole bidder for the franchise, submitted a bid of $100.

At a meeting on July 11, 1977, the Town Council deferred approval of the bid pending a more complete study. The next day, the Council voted to offer Potomac Edison a two-year extension of the existing franchise. Potomac Edison rejected the Town's offer and advised the Town that it would continue to serve customers on a day-to-day basis pending an agreement between the parties.

On September 12, 1979, the Town filed an action asking the court to declare that Potomac Edison had no right to occupy its streets and other public places simply because it held a certificate of public convenience and necessity and that continued occupancy without the Town's consent was unlawful. Potomac Edison filed a cross-bill seeking a mandatory injunction requiring the Town to act favorably on Potomac Edison's bid and to award it the advertised franchise.

On January 24, 1980, the parties entered into an agreement providing that Potomac Edison could continue to occupy the Town's streets and other public places until the dispute was re-

solved, but not longer than five years after the date the franchise expired. By order entered July 13, 1982, the trial court extended the agreement for an indefinite period pending a determination of the rights of the parties.

The trial court entered a final decree on the merits on June 21, 1984. The court found that, absent the Town's consent, Potomac Edison's certificate of public convenience and necessity did not entitle it to occupy the Town's streets and other public places. The court ruled, however, that Potomac Edison had an implied right to continue to do so, stemming from the parties' course of conduct and in consideration of the safety, health, and welfare of the community. That right was conditioned upon the Town's right to terminate the arrangement on notice sufficient to permit Potomac Edison to remove its facilities or to allow the Town to secure reasonably adequate substitute electric service. We granted Potomac Edison an appeal from this decree.

Potomac Edison contends that it has the right, by virtue of its certificate of public convenience and necessity and its prior franchise, to occupy the streets and other public places of the Town, or, alternatively, if a new franchise is required, that the Town had a duty to grant Potomac Edison the advertised franchise because it was the Town's sole bidder. The Town's position is that Article VII, Section 8, of the Constitution of Virginia expressly requires a utility to obtain the consent of a municipality before occupying the Town's streets and other public places.

Article VII, Section 8, provides in pertinent part:

> No . . . electric light or power . . . company . . . shall be permitted to use the streets, alleys, or public grounds of a city or town without the previous consent of the corporate authorities of such city or town.

While the Town acknowledges that Potomac Edison had its consent when it entered the Town in 1951, the Town asserts that Article VII, Section 8, requires a utility to obtain consent from a town to continue to occupy the streets and other public places once a prior franchise has expired. Because the Town has not given Potomac Edison its consent, the Town contends, the Town may "oust" Potomac Edison under the constitutional provision. Any other reading of that provision, it asserts, would violate the Town's right to control its own streets and public places.

■ We have held that Article VII, Section 8, relates to the entrance of a utility into a town and not to a town's right to oust a utility. In *Culpeper* v. *Vepco*, 215 Va. 189, 189, 207 S.E.2d 864, 865 (1974), we addressed the question "whether a franchised public utility operating electric distribution lines and facilities in a specified rural area outside the corporate limits of a town has a right to continue serving its customers after the area is annexed by the town." Although a statute enacted after our decision in *Culpeper* may have altered the *result* we reached there (a question we do not decide here),[1] the constitutional analysis we made in that case is controlling. Addressing the scope of Article VII, Section 8, we said:

> Admittedly, where a utility proposes to enter an incorporated town and intends to install its facilities therein, the utility must first obtain the consent of the municipality. However, we are not dealing here with a utility that seeks an original entry into a town, but with franchised companies which have been serving the area involved for approximately twenty years prior to its being annexed by the town.
>
> . . . .
>
> We think it clear that the intention of the framers of the constitutional provision in question was to empower towns to prohibit a utility from *entering* the town without prior consent.

215 Va. at 191-94, 207 S.E.2d at 866-68 (emphasis in original).

---

[1] In *Culpeper*, we said:
[N]o procedure exists in Virginia under which annexing towns and cities can acquire by eminent domain the facilities of a franchised utility serving an area which is annexed by such municipalities.
215 Va. at 193, 207 S.E.2d at 867 (footnote omitted).
Following our decision in *Culpeper*, the General Assembly enacted Code § 56-265.4:2 (Cum. Supp. 1987) which provides:
A. Any city or town . . . which provides electric utility service for the use of its residents may, at any time following annexation of additional territory . . . acquire the distribution system facilities of the electric utility serving the annexed area in the manner provided by Title 25. . . .
B. Upon completion of the eminent domain proceedings or upon the negotiation of a settlement between the city or town and the electric utility, the State Corporation Commission shall amend the certificate of convenience and necessity of the public utility whose distribution system facilities have been acquired to reflect the change in its territory.

Potomac Edison first entered the Town in 1951 with the prior consent of the Town in the form of a franchise. Because Article VII, Section 8, relates only to a utility's original entry, that provision, standing alone, provides no guidance on the Town's power to oust Potomac Edison.

The Town also cites Article VII, Section 9, as its authority to oust Potomac Edison. That section provides in relevant part:

> No [municipal] franchise, lease, or right of any kind to use any such public property . . . shall be granted for a longer period than forty years . . . . Before granting any such franchise or privilege for a term in excess of five years . . . the city or town shall, after due advertisement, publicly receive bids therefor. Such grant, and any contract in pursuance thereof, may provide that upon the termination of the grant, the plant as well as the property, if any, of the grantee in the streets, avenues, and other public places shall thereupon, without compensation to the grantee, or upon the payment of a fair valuation therefor, become the property of the said city or town; but the grantee shall be entitled to no payment by reason of the value of the franchise. Any such plant or property acquired by a city or town may be sold or leased or, unless prohibited by general law, maintained, controlled, and operated by such city or town. Every such grant shall specify the mode of determining any valuation therein provided for and shall make adequate provisions by way of forfeiture of the grant, or otherwise, to secure efficiency of public service at reasonable rates and the maintenance of the property in good order throughout the term of the grant.

The Town argues that this section's limitation of 40 years on the duration of any franchise granted by a municipality contemplates a power to oust a public utility upon termination of any franchise granted. Absent such a power, the Town asserts, a franchise that is limited by constitutional provision "to a term of years, would in fact be in perpetuity once the facilities were lawfully installed pursuant to a valid and subsisting franchise."

■ As we construe Sections 8 and 9 of Article VII read together, the authors of our Constitution intended that a municipality have the power to grant or deny a franchise to a public utility, but that a municipality, having once granted a franchise, is im-

pressed with a duty to ensure uninterrupted utility service to the consuming public. Such a duty requires a municipality to make plans for service following termination and to do so in time to implement the plan it selects before the franchise expires.

■ The courses available to a municipality in the discharge of that duty are those authorized by the Constitution and statutes of the Commonwealth. The first is found in Section 9 of Article VII. As a condition to the grant of a franchise, a municipality is authorized to include, in the text of the franchise document or in "any contract in pursuance thereof", a provision that title to the plant or property installed in the streets and other public places shall pass to the municipality, with or without compensation. Having acquired title, the municipality may sell or lease the property to others or, "unless prohibited by general law", may operate the system itself.

■ A second course of action is posited in Code § 15.1-292. With the permission of the State Corporation Commission, a city or town may institute eminent domain proceedings to acquire and operate the plant and property owned by the franchisee. *See* Code § 25-233; *Bridge Corp.* v. *City of Richmond*, 203 Va. 212, 217, 123 S.E.2d 636, 639-40 (1962).

■ A municipality may select a third method of discharging its public duty. A municipality is expressly excluded from coverage of the Utility Facilities Act, *see* Code § 56-265.1(a), and the provisions of Article IX of the Constitution respecting the powers and duties of the State Corporation Commission, *see* Va. Const. art. IX, § 7. Accordingly, in anticipation of the termination of a franchise, a city or town has the power to install its own distribution system and either to make bulk service contracts with a public utility or, if need be, to construct and operate its own plant. *See Culpeper*, 215 Va. at 192, 207 S.E.2d at 866; *Light* v. *City of Danville*, 168 Va. 181, 208, 190 S.E. 276, 287 (1937).

■ Yet a fourth course is open. Upon proof that the service rendered by a municipality's franchise grantee "is inadequate to the requirements of the public necessity and convenience", the State Corporation Commission may authorize a second certificated utility to serve the municipal area.[2] Code § 56-265.4.

---

[2] In such case, a municipality is authorized to receive bids from both certificated utilities and to accept the higher bid or to "reject a higher and accept a lower bid and award the franchise . . . to the lower bidder, if, in its opinion, some reason affecting the interest of the city or town makes it advisable so to do". Code § 15.1-310.

■ None of the foregoing courses is available to the Town. So far as appears from the record and argument on appeal, neither the 1951 franchise nor "any contract in pursuance thereof" contained a provision authorizing the Town to acquire Potomac Edison's plant and property upon termination of the franchise.[3] The Town did not commence eminent domain proceedings or make plans to construct and operate its own plant and facilities in anticipation of the expiration of the franchise. And Potomac Edison is the only electric power utility certificated to serve the Town.

■ Considering the circumstances disclosed by this record, we are of opinion that the only way the Town can discharge its duty to ensure uninterrupted electric service so vital to the health, safety, and welfare of the dependent public is to accept the bid submitted by Potomac Edison and to grant it the franchise defined in the advertisement. We will, therefore, reverse the decree entered below and enter judgment here directing the Town to grant the franchise, but our mandate will be without prejudice to the rights of the parties to negotiate and execute "any contract in pursuance thereof".

*Reversed and final judgment.*

CARRICO, C.J., dissenting.

I agree with the majority that Sections 8 and 9 of Article VIII of the Virginia Constitution should be read together, but I would reach the opposite result. I think that consent granted pursuant to Section 8 is commensurate with a franchise granted pursuant to Section 9. In other words, a Section 8 consent cannot outlive a Section 9 franchise, whose life span cannot exceed forty years. Yet,the majority would give perpetual life to the consent granted in the 1951 franchise, which died a natural death in 1977.

*Culpeper* v. *Vepco* is inapposite. All *Culpeper* settles is that a utility which operates in a portion of a county does not need consent to continue operating when the portion is annexed to a municipality. Obviously, a different factual situation is presented here.

---

[3] Neither the franchise nor any contract relating thereto is in the record before us.

Furthermore, I know of no basis, and the majority cites none, for saying that Luray *must* accept *Potomac Edison's* bid and award it a franchise. This in my opinion is an unwarranted usurpation of the legislative discretion vested in Luray's council.

I would affirm the judgment of the trial court.